James E. **LOFLAND**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 20263.

United States Court of Appeals
Ninth Circuit.

March 8, 1966.

Rehearing Denied June 6, 1966.

Thomas W. Lefner, Hollywood, Cal., for appellant.

Manuel L. Real, U. S. Atty., John R. Van De Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Mark L. Dees, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge:

Appellant appeals from a judgment of conviction on four counts of an indictment. Count One charged a violation of 18 U.S.C. § 1343.[1] Count Two charged a violation of 18 U.S.C. § 2315.[2] Count Three charged appellant and one Frederick George Koeneke with a violation of 18 U.S.C. § 2315, and Count Four charged appellant and Frederick George Koeneke and Dale O'Harley Jennings with a violation of 18 U.S.C. § 2315.

Trial was to the court sitting without a jury, a jury trial having been expressly waived, in writing, and in open court by the appellant. Appellant was represented by counsel of his own choosing at the arraignment, trial and imposition of sentence. Following the District Court's denial of appellant's motion for new trial, appellant was committed to the custody of the Attorney General for a period of ten years on each of the four counts, each sentence to begin and run concurrently with each other and concurrently with any other sentence defendant was then serving.

Co-defendants Koeneke and Jennings, named in Counts Three, Four and Five were found not guilty.

We shall first consider Counts One and Two in which appellant alone was charged.

1. "§ 1343. *Fraud by wire, radio, or television*

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

2. "§ 2315. *Sale or receipt of stolen goods, securities, moneys, or fraudulent State tax stamps.*

"Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen, unlawfully converted, or taken; or

"Whoever receives, conceals, stores, barters, sells, or disposes of any falsely made, forged, altered, or counterfeited securities or tax stamps, or pledges or accepts as security for a loan any falsely made, forged, altered, or counterfeited securities or tax stamps, moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been so falsely made, forged, altered, or counterfeited; or

"Whoever receives in interstate or foreign commerce, or conceals, stores, barters, sells, or disposes of, any tool, implement, or thing used or intended to be used in falsely making, forging, altering, or counterfeiting any security or tax stamp, or any part thereof, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing that the same is fitted to be used, or has been used, in falsely making, forging, altering, or counterfeiting any security or tax stamp, or any part thereof—

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

"This section shall not apply to any falsely made, forged, altered, counterfeited, or spurious representation of an obligation or other security of the United States or of an obligation, bond, certificate, security, treasury note, bill, promise to pay, or bank note, issued by any foreign government or by a bank or corporation of any foreign country."

Count One of the indictment charged:

## "COUNT ONE
### [18 U.S.C. § 1343]

"Beginning on or about May 28, 1964 and continuing to on or about June 4, 1964, the defendant JAMES ELDON LOFLAND devised and intended to devise a scheme and artifice to defraud the Crocker-Citizens National Bank, Van Nuys, California Branch and to obtain money from said bank by false pretenses, that is, by the pledging of stolen stock certificates in order to obtain a $35,000.00 loan from said bank.

"In carrying out his scheme the defendant made the following false and fraudulent representations well knowing at the time that the representations and promises were false:

"1. That the defendant was authorized to pledge the stock by the owner of the stock, Elizabeth Pandolfi.

"2. That the telegram he presented the said bank on May 29, 1964 to substantiate his claim of authorization from Elizabeth Pandolfi was from Elizabeth Pondolfi.

"3. That the letter he presented the bank on June 3, 1964 to further support his claim of authorization was signed by Elizabeth Pandolfi and bore the signature guarantee of the Chase Manhattan Bank in the name John Brent.

"On or about May 28, 1964, the defendant JAMES E. LOFLAND for the purpose of executing the aforesaid scheme and artifice, caused to be transmitted by means of interstate wire, a telegram from New York City, New York to Beverly Hills, California, Los Angeles County, within the Central Division of the Southern District of California."

Count Two of the indictment charged:

## "COUNT TWO
### [18 U.S.C. § 2315]

"On or about May 29, 1964, the defendant JAMES ELDON LOFLAND, received and disposed of 355 shares of American Telephone and Telegraph Common Stock and 100 shares of Kennecott Copper Corporation Common Stock, of a value of more than $5,000.00 which securities were moving as, and constituted a part of interstate commerce from Sharon, Pennsylvania to Los Angeles County, California, within the Central Division of the Southern District of California; and said securities theretofore had been stolen and unlawfully converted as the defendant then and there well knew."

At the beginning of the trial the parties, in writing, including their respective counsel, signed a stipulation which, insofar as it relates to Counts One and Two, reads as follows:

"3. That on March 12, 1964, a burglary was committed at the residence of Mrs. Elizabeth Pandolfi, 1546 Westerman Road, Sharon, Pennsylvania, at which time a safe containing the following stock certificates registered in her name was stolen:

| | [Certificate No. | Shares] |
|---|---|---|
| American Telephone and Telegraph Company | BNO17462 | 344 |
| Kennecott Copper Corporation | N54599 | 100 |
| "        "        " | N54598 | 100" |

"5. That none of the signatures appearing on the back of any of the certificates listed in Paragraphs 1, 2 and 3 above are genuine.

"6. That exhibits 1, 2, 20, and 36 through 60 are genuine stock certificates and are among those described in paragraphs 1, 3 and 4 above."

The testimony relating to these two counts may be summarized as follows:

On May 29, 1964, appellant was introduced to Mr. A. L. Clark, of the Panorama City branch of Crocker-Citizens National Bank, Van Nuys, California. Appellant asked for a loan of $35,000, purportedly for a down payment on a new home, and offered as collateral two stock certificates. These certificates were respectively for 344 shares of American Telephone and Telegraph, Certificate No. BNO17462, and for 200 shares of Kennecott Copper Corporation, Certificate No. N54599 and N54598, and were issued in the name of Elizabeth Rose Pandolfi. A signature, apparently written by Mrs. Pandolfi, appeared on the back of the certificates with a guarantee stamp and officer's signature apparently from Chase Manhattan Bank. It was stipulated in writing by the parties that these certificates had in fact been stolen from Mrs. Pandolfi's residence in Sharon, Pennsylvania. The approximate market value of the shares represented by the certificates was $55,738 at that time.

When Clark told appellant that the bank could not advance the full amount requested because the stocks were not in appellant's name, appellant produced a telegram which appeared to be from Mrs. Pandolfi giving him complete authority to pledge her stock for a loan. This was not completely satisfactory to Clark and he requested that appellant obtain Mrs. Pandolfi's signature on an Authority to Pledge form. Appellant stated that he would be flying to New York immediately and would have the Authority signed by Mrs. Pandolfi and return it to Clark.

Anticipating execution and delivery of the Authority to Pledge, Clark advanced $10,000 to appellant's checking account on behalf of the bank, for which appellant executed a promissory note and for which certain supporting documents were made out in the bank's normal course of business.

On June 3, 1964, appellant returned to the bank with a new and different Authority to Pledge form which had apparently been executed by Mrs. Pandolfi and upon which her signature had been guaranteed by the same Chase-Manhattan stamp and signature of "John Brent" as that which appeared on the certificates. Appellant explained that he had not gone to New York but had dictated the Authority to Pledge over the telephone for Mrs. Pandolfi's execution. Clark then advanced $25,000 more to appellant's checking account, and appellant executed a promissory note for $35,000. At the same time appellant had two cashiers checks in the amounts of $7,000 and $10,000 respectively, prepared by the bank.

Mrs. Pandolfi, a resident of Sharon, Pennsylvania, testified that she had neither furnished the certificates to Chase-Manhattan for guarantee, sent a telegram to appellant, signed a pledge document, met appellant prior to seeing him in court, nor given him any stock for any purpose. A Western Union official testified from his company's records that the telegram had been sent May 28 from New York.

No witnesses were called on behalf of appellant nor did appellant, himself, testify.

Counts Three and Four of the indictment charged violations of 18 U.S.C. § 2315. Count Three charged appellant and co-defendant Koeneke received and disposed of 100 shares of Kennecott Copper common stock of a value of more than $5,000 which securities were in interstate commerce and which appellant and Koeneke knew to be stolen and unlawfully converted. Count Four charged appellant and co-defendants, Koeneke and Jennings, received and disposed of 100 shares of IBM common stock of a value of more than $5,000 which securities were in interstate commerce and which appellant and co-defendants knew to be stolen and unlawfully converted.

With respect to Count Three the evidence discloses that on or about June 5, 1964, appellant gave Koeneke 100 shares of Kennecott Copper stock, certificate No. 54598, issued in the name of Elizabeth Rose Pandolfi. Appellant claimed to have authority to hypothecate the stock and suggested that Koeneke, who

had local financial connections, should use it as collateral at the bank to meet the expenses of certain promotions of appellant and Koeneke then under way. Koeneke presented the stock to the Bank of Downey and used it as collateral to obtain a loan of $5500. The officer of the bank making the loan inquired about the fact that the stock was issued to and endorsed by Elizabeth Rose Pandolfi. Koeneke stated that the stock had been given to him as a pledge. The proceeds of the loan were divided, one-half going to appellant.

The certificates evidencing the shares of Kennecott Copper stock above mentioned were stolen from the residence of Mrs. Elizabeth Pandolfi, as stated in the above mentioned stipulation.

With respect to Count Four it appears that co-defendant, Koeneke, presented to the United States National Bank at Downey, California, on or about June 16, 1964, the certificate No. 216923, representing 100 shares of International Business Machines stock, to be used as collateral for a loan at the bank. The certificate was registered in the name of Burnham & Company, and was stolen from the brokerage firm of Carlisle and Jacquelin, 2 Broadway, New York City, New York. The certificate was delivered to Koeneke by Jennings, who had received it from the appellant. The certificate was endorsed in blank with only a facsimile signature. Certificates in such form normally would be found only in the possession of a stockbroker. Appellant and co-defendants were unsuccessful in securing a loan from the bank.

In addition to the above evidence on the counts above mentioned, evidence was offered and received on behalf of the Government of swindles and attempted swindles on other banks by the use of stock certificates which were stolen from various parties in Pennsylvania, New Jersey and New York.

The appellant, appearing on this appeal *in propria persona,* has utterly failed in his brief to comply with the provisions of Rule 18(2) of the Rules of this Court.

Furthermore, many of the alleged errors of the District Court assserted on this appeal were not asserted in the District Court before or during the trial as required by Rule 41(e) of the Federal Rules of Criminal Procedure. Other errors asserted refer to actions and events which are not included in the record before us, even tangentially. Nevertheless, we proceed to review the errors asserted by appellant.

■ First, appellant asserts that the evidence is insufficient to overcome the presumption of his innocence of the charges. Our review of the record convinces us that the guilt of the appellant is overwhelmingly established.

■ Next, appellant contends that the District Court had no jurisdiction over him because he was illegally arrested and brought before the court on an illegal writ. In Frisbie v. Collins, 342 U.S. 519 (1952) the court stated at p. 522, 72 S. Ct. 509, at p. 511, 96 L.Ed. 541:

"This Court has never departed from the rule announced in Ker v. [People of State of] Illinois, 119 U.S. 436, 444, [7 S.Ct. 225, 229, 30 L.Ed. 421], that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." [Footnote omitted.]

■ Appellant next asserts that certain evidence of an incriminatory nature, introduced against him at the trial, was obtained as the result of an illegal search. The record reveals that this contention

was not raised before or during the trial but is asserted for the first time on this appeal. We find no merit in this contention. The search was lawful as incidental to a lawful arrest.

■ Appellant next asserts that he was denied the right to counsel. The record discloses that at the first interview of appellant by agents of the Federal Bureau of Investigation, he was advised of his right to have counsel, his right to remain silent, and that any statements which he might make could be used against him. He was likewise so advised when interviewed after his arrest. We are unable to find any assertion by appellant of the denial of such right prior to or during the trial of the action. The record further shows that appellant was represented by counsel at his arraignment on October 12, 1964, and throughout his trial which commenced on February 23, 1965.

■ Appellant next asserts that he was prejudiced by the fact that the District Court failed to make special findings of fact as provided for by Rule 23(c) of the Federal Rules of Criminal Procedure which provides that in a case tried without a jury the court shall make a general finding and shall, in addition, *on request,* find the facts special. We find in the record no request on the part of the appellant for special findings. In the case of United States v. Devenere, 332 F.2d 160 (2d Cir. 1964), it is held that no special findings are necessary when there is a general finding of guilty with no request for further findings.

Finally, appellant claims that he was twice placed in jeopardy by the fact that the District Court knew of his previous conviction when pronouncing sentence. The record of what transpired at the time appellant was sentenced is not part of the record on this appeal. Counsel for the Government suggests that the fact of the conviction of appellant in the State of New York was called to the District Court's attention by a presentence report prepared by the Probation Office. Rule 32(c) of the Federal Rules of Criminal

Procedure provides that the report of the presentence investigation "shall contain any prior criminal record of the defendant * * *." We are unable to see any basis for appellant's claim of having been twice placed in jeopardy.

The judgment of conviction is affirmed.