**Wesley Jay MYERS and Dale K. Grassman, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 21584, 21584A.**

United States Court of Appeals
Ninth Circuit.

March 5, 1968.

Rehearing Denied April 9, 1968.

Charles V. Elliott, of Elliott, Davis, Rader & Kitson, Portland, Or., for Myers.

Paul W. Rebben, Seattle, Wash., Christopher C. Cottle, of Berns & Steinberg, San Jose, Cal. (argued), for appellant Grassman.

Gerald Hess (argued), Asst. U. S. Atty., Eugene Cushing, U. S. Atty., Seattle, Wash., for appellee.

Before POPE, DUNIWAY and CARTER, Circuit Judges.

DUNIWAY, Circuit Judge:

Myers and Grassman appeal from judgments convicting them on two counts of an indictment charging them jointly with violating 18 U.S.C. § 2312 (the Dyer Act). They do not challenge the sufficiency of the evidence. They operated a salvage car business in Portland, Oregon. Two different cars were stolen in Portland on May 4 and 11, 1965, and each found its way into their possession. The vehicle identification plate of each was removed at their place of business, and was replaced by another, taken from a wrecked car that they had bought. Each car was then driven to Seattle and sold. It was also shown that they had acquired two other cars that had been stolen in Portland on March 30 and June 16, 1965, and had similarly replaced the identification plates with those from salvage cars bought by them. Both de-fendants took the stand. In essence, they admitted what was done, but denied knowledge that the cars were stolen. The case against them was very strong.

They had in their employ one John Miller, a bodyman, who was the only person besides themselves who had a key to their premises, and who occasionally accompanied Grassman on trips to San Francisco to bring back to Portland salvage cars bought by them.

On cross-examination of Grassman, the following occurred:

"Q. On or about August, 1965, did you call John Miller and tell him, among other things, that if you went down the tube you were going to take everyone with you?

MR. ROUSSO: [Counsel for Grassman] Objection, your Honor * * *. If Mr. Miller wants to testify, let him come to court.

THE COURT: Sustain the objection.

MR. HESS: I will rephrase it * *.

Q. (Continuing) On or about August 19th did you make any statement to the effect if you went down the tube you were going to take everyone with you?

* * * * * *

A. I did not.

MR. ELLIOTT: [Counsel for Myers] Your Honor, I have no objection but I didn't hear this question of Mr. Hess relative to going somewhere. I couldn't get him when he asked the witness whether he made a statement he was going to take everyone with him. I did not understand that.

THE COURT: The Reporter will read the question.

(Whereupon, the following was read by the Reporter:

'Q. On or about August 19th did you make any statement to the effect if you went down the tube you were going to take everyone with you?

A. I did not.')

MR. ELLIOTT: Your Honor, I am going to object to it because—making a statement to whom? The question

is a highly prejudicial question and it has no basis in the testimony at all. It is simply a wild spear thrown in the direction of the witness * * *.

If he wants to lay ground for this, let him do it."

At counsel's suggestion, the jury was excused, and Grassman's counsel moved for a mistrial, saying:

"We have a situation here where the condition which the government has thrown in this statement has to be highly prejudicial regardless of how the man answered it.

If there is a Mr. Miller, and such a statement was made to him, the opportunity was present for the government to bring it in on their direct and to testify to any conversation made with this defendant. That was not done."

There followed a colloquy which we quote in the margin.[1]

The jury was then recalled and instructed by the court:

"I am going to advise you at this time with regard to the testimony that came in a few minutes ago to which objection was made.

It is my view that it was a highly prejudicial type of question and should not have been asked by the Government, and could be prejudicial if the Jury gave it any weight at all, because it sought an admission, in a way, or by a question, that could be construed in some way as an admission of the offense charged here, although on its face it is not clear that that was the case, and we have no knowledge as to who Miller may have been at this time and anything that may be an admission by a defendant must be brought out, usually, unless it is involved in the direct testimony, usually by the government on its main case. It can not be dragged in in this fashion and, while I don't think Mr. Hess intentionally brought in improper evidence, it did come in and I want you now to know that you must utterly disregard it.

---

[1] "THE COURT: (Interposing) I am inclined to agree it is erroneous and somewhat prejudicial.
I will ask, Mr. Hess, on what theory you ask this? It is highly improper, it seems to me.
MR. HESS: Your Honor, I asked it on this basis: An out-of-court statement made by the witness and he was present there.
* * * * *
THE COURT: I don't know who Miller is. If you have an admission, it seems to me you have to bring it in on direct.
MR. HESS: Well, I am sorry. I had a basis in a report.
THE COURT: Why don't you put a witness on?
MR. HESS: Frankly, I didn't have reason to rely on the veracity of Mr. Miller.
MR. ELLIOTT: We join in the motion.
THE COURT: I will strike it. I will not declare a mistrial.
I certainly will have to tell them you are in error in asking it and they are to disregard it entirely.
I will caution you, Mr. Hess, that it is not proper for the government to throw in damaging statements.
MR. HESS: I have a basis in the record that it was made.

THE COURT: That doesn't make any difference.
When was it in the evidence that he said that?
What do you rely on, at all?
MR. HESS: I am relying on him as a witness.
THE COURT: What witness on direct?
You can not come in on cross examination and ask something by way of an admission unless you have some testimony to that effect.
In other words, it seems to me if you have some basis on which it is proper, you might submit it; but it seems to me that you are seeking to get in testimony here that could be prejudicial.
I am hesitant to grant a motion for a mistrial, however, but I will advise the jury to disregard it completely and be cautious that they do not, in any way, construe this as an admission of any kind.
* * * * *
THE COURT: I assume, Mr. Hess, it is your thought that this constitutes, in some way, some kind of admission?
MR. HESS: That was my thought, your Honor—an admission of the Defendant Grassman."

796

You can not in any way construe that question put to him as being evidence of any kind. You must draw no inference from it whatsoever as to either one of the defendants.

I emphasize that caution to you because the Defendants are entitled to a fair trial and you must find them guilty solely from the evidence that is proper and not from statements thrown in by error."

There was no objection to this instruction.

 It is urged that the question was so prejudicial that no instruction could cure it. We disagree for two reasons. First, the question was proper. Contrary to the court's impression, the record did show who Miller was. Grassman himself had identified him on direct examination. By taking the stand, Grassman laid himself open to full cross-examination. De Rose v. United States, 9 Cir., 1963, 315 F.2d 482, 487, cert. denied, 375 U.S. 846, 84 S.Ct. 99, 11 L. Ed.2d 73; D'Aquino v. United States, 9 Cir., 1951, 192 F.2d 338, 369, cert. denied, 1952, 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343. We know of no rule that makes it improper to ask a defendant, on cross-examination, about a prior incriminating statement that he has made, without having first proved the statement as part of the government's case in chief. On the contrary, where a defendant claims lack of guilty knowledge, as Grassman did here, it is quite proper to put such a question to him, at least where the government has informatio . that the statement was made. See Quiles v. United States, 9 Cir., 1965, 344 F.2d 490, 493–494; and see D'Aquino v. United States, supra, 192 F.2d at 370; Lyda v. United States, 9 Cir., 1963, 321 F.2d 788, 792–793.

 Second, assuming that the question was improper, we think that the court's instruction was sufficient, and a mistrial was not required. The jury system as we know it can not function "[u]nless we proceed on the basis that the jury will follow the court's instructions where those instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them * * *." Delli Paoli v. United States, 1957, 352 U.S. 232, 242, 77 S.Ct. 294, 300, 1 L.Ed.2d 278. Here, the incident was a minor one, occurring almost at the end of a long trial. All that the jury had before them was Grassman's denial that he made the statement. The evidence against both defendants was almost overwhelming. The court was clearly of the opinion that an instruction would be sufficient, even though it felt (erroneously, as we think) that the question was improper and prejudicial. We were not present as the trial judge was. We are influenced, in such a case, by his views; he had sat through the whole trial; he had listened to the witnesses and observed them and the attorneys and the jury; he heard the question, the answer, and the objections; he could see and sense what reaction, if any, there was; he could judge their probable effect in a way that we cannot.

██ Next, it is claimed that the last paragraph of the instruction is a direction to convict. We do not so read it. As we have said, there was no objection. Rule 30, F.R.Crim.P. The language used could easily have been modified if it had been called to the court's attention. Moreover, when the court instructed the jury after closing arguments, it told them that they were the sole judges of the facts, that they were not bound by any opinion the court might express as to the facts, that they should consider only evidence properly admitted in the case, that testimony ordered stricken must not be considered, and that if they had a reasonable doubt as to any element of the offense, which had been fully defined, they must acquit. Again, there were no objections.

██ Finally, it is said that the defendants were unconstitutionally deprived of their right to confront and cross-examine Miller. They never asked for that right; no testimony of Miller was used against them.

Affirmed.