**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**J. Norman JONES, Defendant-Appellant.
No. 23594.**

United States Court of Appeals,
Ninth Circuit.
April 7, 1970.

Luke McKissack (argued), Los Angeles, Cal., for defendant-appellant.

Dennis E. Kinnaird (argued), Jo Ann Dunne, Asst. U. S. Attys., Wm. Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BARNES and HUFSTEDLER, Circuit Judges, and PENCE,* District Judge.

BARNES, Circuit Judge:

This appeal is from a judgment of conviction of the one defendant remaining after three codefendants entered pleas of guilty to one or two counts of a nine count indictment charging a violation of 18 U.S.C. §§ 371, 1341, or 1343. Appellant was convicted on six counts, and sentenced concurrently to eighteen months to five years on each count.

In the vernacular, appellant was charged with large scale "check kiting."

Appellant raises six alleged errors relating to the conduct of the trial judge; two more as to the misconduct of the prosecutrix; three as to instructions; four as to the sufficiency of the evidence; one as to the form of the indictment; and one alleging a fatal variance between pleadings and proof.

We find no error, and we affirm.

1. *Fatal Variance and Form of Indictment*

(Appellant's Argument "I")

Appellant urges that there were three separate conspiracies, not one; and that proof of facts prior to the date alleged as the start of the conspiracy (August 1,

* Hon. Martin Pence, Chief Judge, United States District Court for the District of Hawaii, sitting by designation.

1966) established a fatal variance between pleading and proof.

▌ Evidence of acts performed prior to an alleged conspiracy, if properly admissible, do not create a fatal variance. Evidence of prior fraudulent transactions are, and were here "properly" admissible, not to prove the conspiracy charged, but to show some other material fact, such as an absence of mistake, motive, opportunity, intent, preparation, plan or knowledge.

The Government charged, and had the burden to prove, that the defendant conspired to, and did devise, a scheme or artifice (a) to defraud, or (b) to obtain money by means of false or fraudulent pretenses, representations or promises. (18 U.S.C. § 1341.)

▌ The crux of the conspiracy charged was to keep the "nonsufficient funds" checks in float between a Hollywood Bank and a Chicago Bank. Temple did this through the active aid of Jones and Augustyn in Los Angeles, and Erickson in Minneapolis. Each of the defendants performed a different role, and may have had dissimilar motives for participating in the transactions, but this does not mean that a single conspiracy did not exist. United States v. Hoffa, 367 F.2d 698, 706 et seq. (7th Cir.).

▌ Each participant in the conspiracy need not know what other participants are doing, or why. Wood v. United States, 283 F.2d 4 (5th Cir. 1960). The elements of conspiracy may be proved by circumstantial evidence alone. Jordan v. United States, 370 F.2d 126 (10 Cir. 1966), cert. denied, 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 595. Once a conspiracy is proved, "slight evidence is all that is required to connect a defendant with the conspiracy." Diaz-Rosendo v. United States, 357 F.2d 124 (9th Cir. 1966), cert. denied, 385 U.S. 856, 87 S.Ct. 104, 17 L.Ed.2d 83, citing Sabari v. United States, 333 F.2d 1019 (9th Cir. 1964), rehearing denied, July 9 1964.

It seems clear to us that the proof in this case was sufficient for the jury to find that a single conspiracy did exist, and that defendant Jones was a knowing participant of it.

### 2. *Evidence of Prior Acts* (Appellant's Argument "J")

If the purpose of the government offer of testimony of acts prior to August 1, 1966 was to suggest the fraud-oriented propensities of the appellant, then, says appellant (Brief, 70), "the error was most prejudicial." He cites Sang Soon Sur v. United States, 167 F.2d 431 (9th Cir. 1948). This court there said:

> "The admission of the evidence of independent crimes was error. Its admission cannot be justified under any of the exceptions to the general rule. We fail to perceive any relevancy between an *evasion of the payment of income taxes* and a conviction for the possession of opium." *Id.* p. 432. (Emphasis added.)

▌ We agree with the statement of the general rule, *i. e.,* some relevancy must exist between the prior act and the act charged. In United States v. Le-Vison, 418 F.2d 624 (9th Cir. 1969), we said, quoting United States v. Jiminez-Robles, 415 F.2d 308 (9th Cir. 1969):

> "Granted, the *general* rule is, as appellant asserts, that evidence of prior criminal conduct is inadmissible. However, one well established exception to this rule is that such prior criminal conduct can be introduced to show state of mind or intent, design, knowledge or lack of innocent purpose. Craft v. United States, 403 F.2d 360 (9th Cir. 1968); Metheany v. United States, 390 F.2d 559 (9th Cir. 1968); Asher v. United States, 394 F.2d 424 (9th Cir. 1968)."

▌ The evidence here introduced of acts prior to August 1, 1966, which appellant claims constituted error was evidence establishing that:

"(1) The Roberts' loan in February, 1966 was a fraud on Hollywood Bank [R.T. 576–581, 869, 879, 2015, 2040–41, 2032–33];

**1052**

"(2) In February, 1966, Temple cashed worthless Cal-I Exploration checks at Hollywood Bank [R.T. 514–17; 520–26];

"(3) In March, 1966, he (Jones) had been advised that Temple was a 'confidence man' (Sgt. Carpenter's testimony [R.T. 1225–28]); and

"(4) That Jones told Temple about Hollywood Bank's banking procedures so that Temple would know how to float the non-sufficient fund checks between Hollywood Bank and Chicago Bank [R.T. 520–25]." (Appellee's Brf., p. 54.)

We hold such evidence could be properly introduced to show intent, plan, and knowledge. 2 Wigmore, Evidence 3d ed. §§ 300–373; Uniform Rules of Evidence, Rule 55.

We also think these prior transactions were admissible to refute Jones' testimony that he never knew of Temple's check kiting operations prior to January 10, 1967. (R.T. 1706–1708.)

3. *Misconduct of the Trial Judge*

This alleged error is based in six separate instances of judicial actions:

(a) Misstatement of evidence. (Appellant's Argument "E")

(b) Comments constituting partial direction of verdict. (Appellant's Argument "C")

(c) Advising the jury the codefendants had plead guilty. (Appellant's Argument "F")

(d) Questioning of witnesses so as to prejudice appellant. (Appellant's Argument "O")

(e) Reference to a confession not in evidence. (Appellant's Argument "P")

(f) Failure to advise defense counsel in advance the judge would com-

ment on the evidence. (Appellant's Argument "Q")

3(a). Appellant's first argument is that the trial court in commenting on the evidence *"confused"* Exhibit 93 (10 days of "account analysis reports") with Exhibit N ("potential overdraft list") stating that appellant "had stated he had seen all that," referring to Ex. 93. Appellant argues that appellant had never testified he saw the "account analysis reports" *on a regular basis*; but that he *made it a practice* to examine Ex. N, the "potential overdraft list."[1]

Appellant draws too absolute a line between the contents of Ex. N and Ex. 93. Jones did recall seeing Ex. N. It was a record of all checks presented on a given day that might create an overdraft (R. T. 1541). Every day Jones would review the sheets reflecting the potential return items (R.T. 1775). All checks listed in Ex. N would be attached to it (R.T. 971–972). Jones testified he saw *potential overdrafts for the Nickward account* when he reviewed Ex. N (R.T. 1834–35; 1841). Ex. N reflected numerous overdrafts during the month of October, 1966 (R.T. 1839–1875). "It was conceded that these documents [Ex. N] were checked by Appellant each morning." (Opening Brief, p. 48.)

The fact that more detailed and complete information was given each morning on the "account analysis report," (Ex. 93), than that revealed by Ex. N, but that appellant did not always see it, does not mean the judge was confused between Exhibits 93 and N.

3(b). We must consider the comments made by the judge in relation to the facts of this case. It was a long and complicated trial. It was peculiarly a case where a judge might properly comment on the evidence, without arguing its merits, provided he gave the required

---

1. It is of interest that appellant urges, not that Jones testified he never saw the "account analysis reports," (Ex. 93) but that he never saw them *"on a regular basis,"* and that he "had only made it a practice to examine Ex. N"; that the sheets comprising Ex. 93 were "not used much" in the bank, and that there "was very little reference to those sheets by anyone in the bank." None of this proves, of course, that appellant Jones *never* saw them.

admonitions to the jury clearly showing them they were not bound by his comments.

"A federal trial judge, as has many times been said, is more than a moderator or umpire. He has the responsibility to preside in such a way as to promote a fair and expeditious development of the facts unencumbered by irrelevancy. He may assist the jury by commenting upon the evidence, and this way include an appraisal of the credibility of witnesses, provided the comment is fair and the jury is clearly instructed that they are to find the facts and may disregard such comments." Smith v. United States, 305 F.2d 197, 205 (9th Cir. 1962), cert. denied, 371 U.S. 890, 83 S.Ct. 190, 9 L.Ed.2d 124 (1962); Young v. United States, 358 F.2d 429, 430 (9th Cir. 1966).

That the trial court fully complied with his obligations in instructing the jury is clear. (R.T. 2569–2573.)

We conclude the comments made by the court on the evidence showed neither confusion, nor any unfairness, nor were they "a partial direction" of the verdict.

■ 3(c). (Appellant's Argument "F"). It is also urged the trial judge erred in advising the jury that codefendants Erickson, Augustyn and Temple had entered pleas of guilty.

When the trial commenced on January 16, 1968, and before the jury was empaneled, defendant Erickson requested leave to withdraw his plea of not guilty to one count, and to plead guilty thereto. This was permitted. The court then empaneled a jury, an opening statement was made by the Government and the trial was then continued one week. At that time (January 23, 1968), the defendant Augustyn moved to withdraw his not guilty plea, and to plead guilty to one count. The motion was granted, and the defendant Temple then moved to change his plea to two counts, and that motion was granted. The jury was then instructed by the trial judge:

"[T]he reason we are not trying Mr. Augustyn is because he pleaded guilty to one count, the reason we are not trying Mr. Erickson is because he pleaded guilty to one count; and the reason Mr. Temple is not on trial now is because yesterday he pleaded guilty to two counts. So the case will proceed as to Mr. Jones only." (R.T. 57.)

No objection was lodged to this statement. In fact, there was no reason to make any objection. Such a plain and nonargumentative statement is proper. Davenport v. United States, 260 F.2d 591, 595–596 (9th Cir. 1958). *Cf.* also United States v. Aronson, 319 F.2d 48 (2d Cir. 1964), cert. denied, 375 U.S. 920, 84 S.Ct. 264, 11 L.Ed.2d 164, rehearing denied, 375 U.S. 982, 84 S.Ct. 477, 11 L.Ed.2d 428; Wood v. United States, 279 F.2d 359 (8th Cir. 1960).

The case relied upon by appellant which allegedly disclosed "a similar situation" is Edwards v. United States, 286 F.2d 681 (5th Cir. 1960). The situation there was not similar. In *Edwards*, the trial judge relied on "common knowledge," and "what was in the newspapers," and made an incorrect statement to the jury as to the plea of one of three defendants. One of the defendants (Evans), charged as an aider and abettor, had admitted certain facts but denied he had any criminal intent. One defendant (Hall) had been charged as a principal and convicted in a nonjury trial. The third defendant, Edwards, was convicted by a jury, but the trial judge referred to codefendant Evans as having "admitted his guilt and entered a plea of guilty." he had done neither (p. 683). Thus, said the Fifth Circuit, the guilt of Evans was taken from the jury.[2]

Here the trial judge had himself accepted the change of plea from each of the three codefendants, in and during the trial of this case. No error was made by Judge Hall in the recitals re-

---

2. *Cf.* also Hall v. United States, 286 F.2d 676 (5th Cir. 1960).

specting pleas, as was made in the Edwards' case.

If no explanation is made to a jury of why certain defendants, originally in a criminal case, are no longer participants at the trial, the jury is full of curiosity, conjecture and surmise. Most experienced trial judges think the best, safest and fairest procedure to all is a simple and honest statement to the jury as to why codefendants are no longer such. Such a statement was made herein, and under the circumstances of this case was not error.

■ 3(d). Undue interference by questioning witnesses. It is urged as error that the trial judge unduly interfered with the trial of this case. No cases are cited in support of this charge. We find no merit in this alleged error. Spindler v. United States, 336 F.2d 678, 682 (9th Cir. 1964).

■ 3(e). The court's statement that inasmuch as "there have been no admissions against interest in this case put on, or any confessions, so I will skip that portion" (R.T. 2541) was made during his instructions to the jury. Counsel for appellant conjures up the claim the positive statement "there have been no admissions or confessions" as an intimation that there had been an admission or confession. This claim of error is frivolous and approaches the ridiculous. We find no error.

■ 3(f). Appellant's trial counsel was not present while certain instructions were given the jury, nor during certain comment on the evidence by the court. Associate counsel was present representing appellant, but no objection was made, either to such instructions or comment. Now appellant urges the court should have advised appellant's trial counsel what it proposed to say at the later date when trial counsel proposed to absent himself. Such an argument attempts to transfer the responsibility from counsel to the court, and make the latter clairvoyant. The claim is entirely without merit.

4. We next consider the charge of misconduct on the part of the prosecutrix, in that she allegedly (a) suppressed evidence; (b) failed to comply with the court's orders (Appellant's Argument "G"); and (c) made reference to acts of codefendants Temple, Erickson and Augustyn in her opening remarks to the jury (Appellant's Argument "N").

■ Again, the last point ((c) above) urged is frivolous and approaches the ridiculous. The opening statement was made by the prosecutrix *before* Temple entered his plea of guilty. Appellant *assumes* the prosecutrix knew that Temple would later change his mind as to his plea. No proof was offered as to this, and no factual support for any charge of misconduct appears in the record before us. No mistrial was asked for by Jones' counsel, either when the opening statement was made, or when the change of plea was made, and no case is cited to support the claim of error.

4(a), above. The alleged suppression of evidence relates to impeaching testimony (Exs. 85–90). The Exhibits were marked for identification in the cross-examination of Jones (R.T. 2121). The trial court held they were impeaching documents, and did not fall within the court's discovery order (4(b) above) (R.T. 2148). They were used to impeach Jones' denial that he had never received any money from Temple. Temple had testified he gave $6,000 to one Long to give to Jones.

■ This is a matter clearly falling within the discretion of the trial judge in admitting impeaching testimony. Meyer v. United States, 396 F.2d 279, 283 (8th Cir. 1968). A preliminary and pre-trial disclosure of documents (which may or may not be originally in the hands of the prosecution and which may or may not be offered in rebuttal or impeachment to a defendant's testimony) need not ordinarily be produced *prior* to trial—the reason being there is no pre-trial method of establishing their relevancy.

As the Government states, defendant asserts he has an absolute right to all documents prior to trial under the doctrine of Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and United States v. Consolidated Laundries Corporation, 291 F.2d 563 (2d Cir. 1961). These cases do not support defendant's theory. The concept of Brady v. Maryland, *supra,* is that the prosecution must disclose evidence that is *favorable* to the accused. *Id.* 373 U.S. at 87, 83 S.Ct. 1194. In *Consolidated Laundries, supra,* 291 F.2d at 569–570 the court relied upon the fact that the missing documents would have been helpful to the accused in cross-examining plaintiff's witness. Defendant has not, and cannot make any showing that Exhibits 85–90 constitute evidence that would be favorable to Jones.

This is the evidence that the prosecutrix is charged with suppressing. There was no suppression. We find no merit in the charges of misconduct by the prosecution.

5. We next consider the errors charged as to instructions (Appellant's Arguments "A", "B", "D" and "K"), which are: (a) The failure to instruct that an accomplice's testimony must be viewed with caution; (b) the failure to instruct that the principal, Temple, must be found guilty of the substantive offenses before appellant can be found guilty as an aider and abettor; (c) the failure to instruct the jury that guilty knowledge that a crime was being committed is insufficient proof appellant aided and abetted the crime; and (d) the failure to instruct the jury to return a special verdict.

5(a). There is no question but that the "view with caution" instruction is usually given in a case of this kind. Mathes & Devitt, Federal Jury Practice and Instruction § 904.

It is true that some courts have held that it is reversible error not to give such an instruction even *when not requested,* when the evidence was weak —Williamson v. United States, 332 F.2d 123 (5th Cir. 1964); or, *when it is requested,* is correct, is not covered elsewhere, and is on such a vital point that failure to give it deprived defendant of a defense and seriously impaired its effective presentation, Phelps v. United States, 252 F.2d 49 (5th Cir. 1958); or, *when requested* as to an informer's testimony, Fletcher v. United States, 81 U.S.App.D.C. 306, 158 F.2d 321 (1946). It is also true that two circuits have found that a failure to so instruct is plain error, regardless of whether it has been requested under exceptional circumstances. Williamson v. United States, *supra;* McMillen v. United States, 386 F.2d 29 (1st Cir. 1967). It is likewise undisputed that here no such an instruction was requested by defendant's counsel—and that after all instructions were given no objection was raised by the defendant's counsel to the instructions as given. (R.T. 2574). It is also undisputed that in this circuit, the uncorroborated testimony of an accomplice is sufficient to sustain a conviction, Williams v. United States, 308 F.2d 664 (9th Cir. 1962), and that the testimony of one witness, if believed, is sufficient to prove a fact. Proffit v. United States, 316 F.2d 705 (9th Cir. 1963).

The majority of circuits, including our own, have not yet held that the failure to instruct that the testimony of an accomplice is to be viewed with caution is, per se, plain error.

As in so many other areas, we believe a case by case approach is required. While the frequently used Mathes & Devitt 9.04 Instruction was not given, the jury was not left totally without aid. It was instructed as appears in the margin.[3]

---

3. "In this case witness Edward Temple admitted on the witness stand that he had been convicted of and had served terms in the penitentiary for several felonies.

"This evidence is to be considered by you only insofar as it affects the credibility of that witness and must not be considered as evidence of guilt or innocence of the defendant who is on trial.

The suggestion that the jury should pass on the evidence before them—"disregard[ing] the testimony of Temple, let's assume that Edward Temple here is not worthy of [belief as to] his truth, you must determine whether or not the things that he did testify to are corroborated by other circumstances and incidents that can't be changed, such as a person's [testimony] can." (R.T. 2570.)

We agree with the Government that while the instruction did not characterize Temple with the shibboleth word "accomplice," it did, forcefully, direct the jury to closely and carefully scrutinize his testimony, because of his own close connection with the case.

In essence, then, we think it fair to state the jury was instructed to weigh Temple's testimony with great care.

 In addition to the fact that a closely similar instruction was given, we hold that other evidence here introduced did corroborate the testimony of Temple.[4] We have repeatedly held that under such circumstances, the failure of the court, sua sponte, to give the accomplice testimony instruction is not error. Mims v. United States, 254 F.2d 654 (9th Cir. 1958); Young v. United States, 297 F.2d 593 (9th Cir. 1962); Sartain v. United States, 303 F.2d 859, (9th Cir. 1962); Strangway v. United States, 312 F.2d 283 (9th Cir. 1963),

cert. denied, 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199; Dawkins v. United States, 324 F.2d 521 (9th Cir. 1963); Brothers v. United States, 328 F.2d 151 (9th Cir. 1964); Hankins v. United States, 384 F.2d 713 (9th Cir. 1967); Barnes v. United States, 347 F.2d 925 (8th Cir. 1965); DeWitt v. United States, 383 F.2d 542 (5th Cir. 1967); McMillen v. United States, *supra*; United States v. Kelly, 349 F.2d 720, 767 (2d Cir. 1965), cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966).

5(b). As to the aider and abettor instructions, we assume appellant's argument is limited to Counts Two to Six, and not to the conspiracy alleged in Count One.

 The jury was instructed as to what constitutes aiding and abetting (R.T. 2568, lines 6–25; R.T. 2569, lines 1–9). There is no question but there must be a guilty principal before there can be an aider or abettor. Edwards v. United States, 286 F.2d 681 (5th Cir. 1960). We are satisfied the instructions given sufficiently state that someone must have committed the crime charged, and that there must be proof the defendant aided and abetted its commission; "he associated himself with the venture." Nye and Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949). We are influenced here by the fact no objection was made to these

---

"Edward Temple pleaded guilty to two counts of the indictment.

"In judging the credibility of the witnesses in this case, you may believe the whole or any part of the evidence of any witness, or may disbelieve the whole or any part of it, as may be dictated by your judgment as reasonable men and women.

"You should carefully scrutinize the testimony given, and in so doing consider all of the circumstances under which any witness has testified, the witness's demeanor and manner while on the stand, the witness's intelligence, his or her relation to the Government or to the defendant or to any of the parties in this case, and the manner in which he or she might be affected by the verdict and the extent of contradiction or corroboration or other evidence, if any, and every mat-

ter that tends reasonably in the light of your own experience as reasonable men and women to shed light on the truth and credibility of the witness and their testimony." (R.T. 2540–41.)

"I need not review the evidence as was done by the prosecutor here in detail, but let us disregard the testimony of Temple, let's assume that Edward Temple here is not worthy of truth, you must determine whether or not the things that he did testify to are corroborated by other circumstances and incidents that can't be changed, such as a person's testimony can." (R.T. 2570; Appellee's Brief, pp. 37–39.)

4. Witness Hoffman (R.T. 1153–1165). Exs. 35, 48, 49, 49c, 86. Witness Murphy (R.T. 905–916). Testimony of Jones himself (R.T. 2116, 2122, 2178).

instructions and no better instruction offered by defendant's counsel.

5(c). The same observations apply to appellant's argument that guilty knowledge alone is insufficient to convict. We agree, with that principle, but the instructions given in this case required more than knowledge that a crime was being committed—they required active *participation* by Jones, not in every act of Temple, Erickson and Augustyn, but in the total scheme to defraud. We find no error.

5(d). With respect to the lack of special verdicts, we point out, as appellant concedes, it has long been the law that "it is not the practice of the Federal Courts in criminal cases to call for special verdicts." Anderson v. United States, 273 F. 677, 679 (9th Cir. 1921), citing United States Mutual Accident Ass'n v. Barry, 131 U.S. 100, 9 S.Ct. 755, 33 L.Ed. 60.

Special verdicts are sometimes necessary in cases such as treason cases. Cramer v. United States, 325 U.S. 1, 65 S.Ct. 918, 89 L.Ed. 1441 (1945); Haupt v. United States, 330 U.S. 631, 67 S.Ct. 874, 91 L.Ed. 1145 (1947); Tomoya Kawakita v. United States, 190 F.2d 506 (9th Cir. 1951). While clearly the use of special verdicts frequently aids an appellate court in determining the jury's thinking, Beek v. United States, 298 F. 2d 622, 630, 631 (9th Cir. 1962), the least that can be expected from competent counsel is to have them ask for such an aid at the trial court level. Lofland v. United States, 357 F.2d 472 (9th Cir. 1966), cert. denied, 385 U.S. 1026, 87 S. Ct. 755, 17 L.Ed.2d 675; Bisno v. United States, 299 F.2d 711 (9th Cir. 1961).

Here no special verdict was requested by appellant's counsel. While we may question if such a request should have been or would have been granted, had it been made, the fact is it was not, and any error was thus waived.

Nor can we agree the failure to ask for a special verdict resulted in any prejudice to appellant. The jury was correctly instructed on what constitutes the essential elements of the crime of mail fraud (R.T. 2564–65), and it was instructed that its verdict must be unanimous (R.T. 2573). With this in mind, the jury returned a verdict of guilty on the five counts (Counts Two through Six) charging substantive violations of the mail fraud statute.

The law presumes that the jury follows the instructions of the court. Myers v. United States, 390 F.2d 793 (9th Cir. 1968); Winchester v. United States, 394 F.2d 489 (9th Cir. 1968). Accordingly, the verdict on Counts Two through Six must be interpreted as meaning that the jury unanimously believed that the mail fraud scheme alleged in Counts Two through Six existed. Therefore, since Count One charged that one of the objects of the conspiracy was to commit the mail fraud scheme alleged in Counts Two through Six, it thus becomes obvious that the verdict on Count One was predicated, at least in part, on a unanimous decision that Jones and his coconspirators conspired to violate the mail fraud statute.

6. This brings us to Appellant's Argument "H"—the insufficency of the evidence as a matter of law (a) with respect to a violation of the mail fraud statute (18 U.S.C. § 1341), because the mails were used *after* the fraudulent scheme was completed, and (b) because there was no proof of intent to defraud.

6(a). With respect to the chronological timing of the checks, appellant largely relies on Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 89 L. Ed. 88 (1949). While certain language in that case supports appellant's position, a careful reading of it indicates its rule has application only to a single act of cashing a worthless check, and not to a continuing check kiting scheme to defraud, as was here found.

The same point was raised before this court in Suhl v. United States, 390 F.2d 547, 552, 553 (9th Cir. 1968), wherein this court stated:

"Reliance on Kann is misplaced. That case involved fraudulent diver-

sion of corporate funds, the scheme being complete when the corporation's checks were cashed. The bank's later use of the mails to collect the checks was irrelevant to the scheme and was thus held to be an insufficient basis upon which to base a mail fraud conviction. The Court specifically distinguished cases where use of the mails is an integral part of the scheme. 323 U.S. at 94–95 [65 S.Ct. 148]. *In the present case, an essential part of the charged transaction was the delay incident to the necessity of mailing the Gibson checks to Covelo. This delay enabled Suhl to deal in Royal Properties stock with non-existent funds."* (Emphasis added.)

*Cf.* also, Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954), and United States v. Kelem, 416 F.2d 346 (9th Cir. 1969).

The Court itself in *Kann, supra*, had qualified its general language by this statement:

"The case is to be distinguished from those where the mails are used prior to, and as one step toward, the receipt of the fruits of the fraud, such as United States v. Kenofskey, 243 U. S. 440, 37 S.Ct. 438, 61 L.Ed. 836. *Also to be distinguished are cases where the use of the mails is a means of concealment so that further frauds which are part of the scheme may be perpetrated."* *Id.* 323 U.S. at 94–95, 65 S.Ct. at 151. (Emphasis added, citing cases in n. 9.)

 6(b). We find no merit in the position that there was no proof of intent to defraud. While such an intent is an essential element in a mail fraud case, it was charged in the indictment, instructed on by the court, and found by the jury. The jury could have found the appellant Jones acted with gross negligence, as his counsel urges, but without any intent to defraud. The jury did not so find, and we cannot disturb its finding. Of course, intent can be found

from circumstantial evidence, Phillips v. United States, 356 F.2d 297 (9th Cir. 1955), and need not be specifically admitted or confessed.

7. We need not specifically answer appellant's Arguments "L" and "M", other than to state:

(1) We are thoroughly familiar with the dangers and perils to defendants in conspiracy cases, and the use of the theory of a conspiracy in many criminal prosecutions. But we know of no cases forbidding the use by United States Attorneys of any United States statutes creating crimes. The remedy, if any is required, lies with the legislative branch of our Government, not the judicial. Anslwer v. United States, 381 F.2d 37 (9th Cir. 1967).

(2) As to overt acts alleged between defendant Jones and one Gregory, a non-defendant, the Government asserts the telephone conversation named in overt act number four, Count One, while *from* Gregory *to* Jones, was still an overt act in furtherance of the conspiracy because its topic was certain "nonsufficient fund checks" that Temple had cashed as part of the check kiting scheme alleged in the indictment. We agree it could be. *Cf.* Bartoli v. United States, 192 F.2d 130 (4th Cir. 1951).

 It is clear as long as the disposition of the case against a coconspirator does not remove the basis for the charge of conspiracy, a single defendant can be convicted of the offense based upon proof of overt acts committed by the coconspirator not tried or not convicted. Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942); Ng Pui Yu v. United States, 352 F.2d 626 (9th Cir. 1965); United States v. Shipp, 359 F.2d 185 (6th Cir. 1966, cert. denied, 385 U.S. 903, 87 S.Ct. 213, 17 L. Ed.2d 134; Nassif v. United States, 370 F.2d 147 (8th Cir. 1966).

Finding no error, the conviction is affirmed.