Harold Albert HOPKINS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 22883.

United States Court of Appeals Ninth Circuit.

Jan. 9, 1969.

Benjamin P. Dillahunty (argued), San Diego, Cal., for appellant.

Phillip W. Johnson (argued), Asst. U. S. Atty., Edwin J. Miller, Jr., U. S. Atty., San Diego, Cal., for appellee.

Before MERRILL and DUNIWAY, Circuit Judges, and CRARY,* District Judge.

DUNIWAY, Circuit Judge:

Hopkins was convicted on a charge of conspiracy to conceal and facilitate the transportation and concealment of marihuana imported contrary to law. (21 U.S.C. § 176a.) On appeal, his principal attack is upon the indictment. We affirm.

The evidence shows the following: Hopkins entered the United States from Mexico at the San Ysidro port of entry on the morning of September 24, 1967. He arrived there in a car driven by Jon Eric Andersen. He was found to be carrying a large sum of cash, $760. After being properly warned, he stated that he had agreed with Andersen that he, Hopkins, would drive a certain 1956 Oldsmobile car from the United States to Mexico, loaded with weapons, that the weapons were to be exchanged for marihuana, and that Hopkins was to bring the marihuana, in the same car, into the United States. The marihuana was then to be shipped (whether by Hopkins is not

* Honorable E. Avery Crary, United States District Judge, Central District of California, sitting by designation.

clear) to New York, where Hopkins was to go, obtain the marihuana and deliver it to Andersen. For these services, Hopkins was to be paid $2,000. When the agreement was made, Andersen paid Hopkins $50. The trip that was interrupted by the agents was arranged by Andersen for the purpose of showing Hopkins where to take the carload of weapons. In Tijuana, Andersen gave Hopkins $800 and a set of car keys for the Oldsmobile, which, as Hopkins was told, was parked in Barstow, California. Hopkins spent $40 in Tijuana; the $760 was what was left of the $800.

Hopkins had on his person a set of car keys attached to a tag, on which appeared " '56 Olds, H.T., blue." On the same day, two agents drove Hopkins 170 miles to Barstow, where they located a 1956 Oldsmobile, hardtop, two-door, blue in color. It was locked, and one of the agents opened it with the keys taken from Hopkins. He removed the interior side panels from the doors and found marihuana debris inside the doors. He also found in the car certain documents indicating that the car was owned by a "John" Andersen. The car contained no weapons.

The pertinent portions of 21 U.S.C. § 176a read as follows: (We have inserted numbers in brackets to indicate various offenses that it denounces.)

" * * * whoever * * * [1] imports or brings into the United States marihuana contrary to law, or [2] smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or [3] receives, [4] conceals, [5] buys, [6] sells, or in any manner [7] facilitates the transportation, [8] concealment, or [9] sale of such marihuana after being imported or brought into * * * or [10] conspires to do any of the foregoing acts, shall be imprisoned * * *."

The indictment, in pertinent parts, reads:

"Beginning at a date unknown * * * and ending on or about September 27, 1967 * * * defendants John Erick Anderson [1] and Harold Albert Hopkins * * * conspired to * * * conceal and facilitate the transportation and concealment of marihuana, which marihuana had been imported and brought into the United States contrary to law * * *."

Thus there was charged a conspiracy to commit three substantive offenses, which we have numbered 4, 7, and 8. All of them deal with activities within the United States, after importation. A conspiracy to import or bring in or smuggle or clandestinely introduce is not charged.

Counsel first argues that the phrase "which marihuana *had been* imported and brought into the United States" [emphasis added] refers to marihuana brought in before the date of the conspiracy. He then says that the only such marihuana as to which there is proof is the debris found in the car at Barstow, that there is no proof of a conspiracy to conceal or to facilitate the transportation or concealment of that marijuana, and hence that the government did not prove what is charged. Given the premise, the argument is persuasive.

■ We do not, however, accept the premise. We think that the more natural meaning is that the conspiracy related to the future and that the particular acts to be done—concealing and facilitating the transportation and concealment —were to be done after the marihuana "had been imported and brought in" in the future. At least, the indictment is, to us, as susceptible to that construction as it is to counsel's construction. The statute, in defining offenses 4, 7, and 8, uses the words "after being." The indictment says: "which * * * had been." The latter seems to mean the same as the former. Both are somewhat awkward expressions. The language of

---

1. At a pre-trial hearing, the true name was shown to be Jon Eric Andersen. Hopkins was tried separately.

the statute is perhaps more awkward than that of the indictment.

■ The charge is substantially in the language of the statute, a practice that we have approved.[2] At the most, it could be considered ambiguous. Had counsel thought it so, he could have asked for a bill of particulars, Rule 7(f), F.R.Crim.P. He did not, and the reason is made clear by the record.

The complaint that was verified before a United States Commissioner on January 11, 1968, contained a more detailed description of the conspiracy, which we set out in the margin.[3] The transcripts of pre-trial hearings in the case show that counsel for Hopkins knew that Hopkins had been previously indicted, on two counts, one for smuggling and the other a "tax count," relating to the marihuana found in the car at Barstow, and that those counts had been dismissed. He asserted that the present indictment was "based upon the same transaction and the same evidence." To this government counsel replied:

"Well, your Honor, actually the facts are that the defendant came across the border * * *.

He had in his possession $760 in cash * * *.

The defendant * * * confessed that he and Andersen had conspired to go to Barstow, California, to get an Oldsmobile loaded with weapons and ammunition, drive the car to Tijuana where a Mexican would take out the weapons and ammunition, reload the Oldsmobile with marijuana, and then he was to drive the marijuana back to Los Angeles for co-conspirator Andersen * * *."

Defense counsel then said:

"If there was a conspiracy, it was frustrated upon the defendant's entry into the United States at the border station. The automobile was not driven anywhere. It was found in Barstow. I mean, if there was a conspiracy, from the inception of it the automobile in question had never been touched, moved, or anything of that nature."

Government counsel replied:

"It had marijuana debris in the inside panels so obviously it had been used to smuggle a load of marijuana before."

In his opening statement at the trial, government counsel again described the conspiracy. Finally, counsel raised the point that he now makes for the first time at the close of the government's case. He then knew from government counsel's argument to the court that the only relevance that the government saw in the marihuana found in the car at Barstow was that it was some indication that the car might have been used for smuggling before, and that no claim was made that the conspiracy was to conceal or facilitate the transportation or concealment of that marihuana. In his reply

2. See Tenorio v. United States, 9 Cir., 1968, 390 F.2d 96, 99; Williamson v. United States, 9 Cir., 1962, 310 F.2d 192, 195. See also Leyvas v. United States, 9 Cir., 1967, 371 F.2d 714, 717, to the effect that where the conspiracy is charged under a statute like section 176a, (there 21 U.S.C. § 174) overt acts need not be alleged or proved. Accord, as to proof under section 176a: Ewing v. United States, 9 Cir., 1967, 386 F.2d 10, 15.

3. "Harold Albert HOPKINS did aid, abet, and conspire to smuggle marihuana into the United States from Mexico. To wit: On 9–15–67 Hopkins was approached by Jon Eric ANDERSON to smuggle marihuana into the U.S. from Mexico and he would earn approximately $2000 in the venture; on or about 9–25–67 Hopkins and Anderson went to Mexico, and in fact, contacted Alex HINOJOSA, a known narcotic dealer, on the same date Anderson gave Hopkins $800 as part payment for his services of which Hopkins had $760 in his possession when arrested at the port of entry, San Diego (San Ysidro), California. Anderson also gave Hopkins the keys to a 1956 Oldsmobile and directed him to pick up the vehicle in Barstow, California and return it to Tijuana to be 'loaded'. Investigation revealed that the Oldsmobile was, in fact, parked in Barstow, California, and the key fit the vehicle."

argument, government counsel again made his position clear.[4]

In this case, as in Heisler v. United States, 9 Cir., 1968, 394 F.2d 692, we are satisfied that appellant suffered no prejudice; that he was not misled by the indictment but knew exactly what charge he had to meet, and that the record fully protects him against any possible double jeopardy if any other proceedings are taken against him for a similar offense.

Affirmed.

4. "Well, your Honor, the conspiracy charge looks to the future, and it refers to marijuana [which] in the future would be brought into the United States. We are not referring to the debris as the marijuana mentioned in the conspiracy charge."