**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Van Otis DOUVER, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joe Mack HARRIS, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jack HARRIS, Jr., Defendant-Appellant.**

**Nos. 72–2024 to 72–2026.**

United States Court of Appeals, Ninth Circuit.

Jan. 11, 1973.

Certiorari Denied April 23, 1973.
See 93 S.Ct. 1933.

Barry J. Portman, Deputy Federal Public Defender (argued), Martin Levine, Federal Public Defender, Los Angeles, Cal., Carl E. Stewart (argued), Newport Beach, Cal., Marcus O. Tucker, Santa Monica, Cal., for defendants-appellants.

Richard J. Trattner, Asst. U. S. Atty. (argued), Kenneth P. Snoke, Eric A. Nobles, Asst. U. S. Attys., William D. Keller, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BARNES and TRASK, Circuit Judges, and EAST,* District Judge.

EAST, District Judge:

The Defendant-Appellants Van Otis Douver (Douver), Joe Mack Harris (Harris) and Jack Harris, Jr. (Harris, Jr.) were jointly indicted on two counts charging offenses under 18 U.S.C. Section 659 (Sec. 659).[1]

Count 1 charged, inter alia, that the defendants ". . . unlawfully took and carried away, with intent to convert to their own use . . . tobacco products . . . from Union Terminal Warehouse, 747 Warehouse Street, Los Angeles, California, which goods constituted, had been moving as, and had been part of an interstate shipment of freight and express, the goods having been consigned by American Tobacco Company, Union Terminal Warehouse, Vernon, California, to Veterans Canteen Service, Phoenix, Arizona;" and other points in Arizona.

Count 2 charged, inter alia, that the defendants ". . . with intent to convert to their own use, had in their possession . . . tobacco products . . . which had been stolen, which goods constituted, had been moving as, and had been a part of an interstate shipment of freight and express, having been consigned by American Tobacco Company, Union Terminal Warehouse, Vernon, California, to Veterans Canteen Service, Phoenix, Arizona;" and other points in Arizona.

A jury found each defendant guilty on both counts, and each moved for Arrest of Judgment, Judgment of Acquittal and a New Trial. The motions were denied.

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. Sec. 659 provides, inter alia: "Whoever . . . takes, from any . . . motortruck, or other vehicle, or from any . . . storage facility, . . . platform or depot . . . with intent to convert . . . any goods . . . moving as or which are a part of or which constitute an interstate . . . shipment of freight . . . is guilty of an offense."

Douver, Harris and Harris, Jr. were separately sentenced to custody on each count, the terms to run concurrently, and they each perfected separate appeals. They are at liberty on bail.

The separate appeals were consolidated for the purpose of oral argument and this decision. We note this Court's jurisdiction under 28 U.S.C. Sections 1291 and 1294 and affirm.

## FACTS

During the evening of November 16, 1971 a 40-foot commercial semi-trailer, unhitched to a prime mover, (trailer) was parked in a backed-in position 1–2 feet distant from the loading dock of the Union Terminal Warehouse, at 747 South Warehouse Street in Los Angeles, California. The parties stipulated that this trailer contained the ". . . tobacco products, . . ." named in both counts of the indictment, that these goods were part of an interstate shipment of freight, and that the goods had a value in excess of $100.

Special Agents of the Federal Bureau of Investigation (FBI Agents) set up a stake-out or surveillance on the scene of the trailer. As a feature of the surveillance three FBI Agents were secreted and locked inside the trailer. Others took mobile surveillant positions.

Persons, Douver included, were observed "casing" the trailer from slow moving passing automobiles.

Later than evening, Douver, Harris and Harris, Jr., acting in concert, but playing separate roles, caused a stolen tractor to be attached to the trailer and transported the trailer with its locked in goods and FBI Agents several miles upon three freeways to and parked it on a quiet portion of Figueroa Street in Los Angeles. The surveillance mobile FBI team was tailing throughout.

The defendants broke the lock on a side door of the trailer, opened the same for entry, instantly observed the unsuspected cargo of FBI Agents, slammed the door shut and fled the scene to a brief freedom.

## DOUVER'S APPEAL

Douver presented to the District Court and to us here a single issue or question, namely, whether the evidence before the jury was sufficient to support a finding of the necessary element of adverse possession, dominion and control of the goods to convict Douver for either theft as charged in Count 1, or for possession of stolen goods as charged in Count 2. No question of Douver's intent to commit the two crimes as charged is raised.

## DISCUSSION

Douver claims that under the evidence before the jury the FBI surveillance teams held the actual possession, control and dominion of the goods to his exclusion. Hence, no theft, nor possession of stolen goods was committed on his part. The position appears novel, but, surprisingly, not new. A similar argument was advanced in Herreres v. United States, 411 F.2d 1198 (9th Cir. 1969). The defendant in *Herreres* was convicted of concealing and transporting marijuana illegally imported into the United States. In that case, U. S. Customs Agents had been tipped off that a large amount of marijuana would be transported across the border in a certain automobile. The agents kept the vehicle under surveillance. When it arrived in Los Angeles the agents staked it out for two days. As Herreres entered the car, he was arrested.

On appeal it was contended by Herreres that he had no control over the contents of the vehicle because the agents had it under surveillance. Presumably, all possession and control had passed to the agents.

To that contention the court stated, at page 1200:

"Finally, we reject appellant's contention that he could not have had

dominion and control over the marijuana because the Ford was under the constant observation of customs agents. Pederson v. United States, 392 F.2d 41 (9th Cir. 1968)."

Herreres had only a mobile surveillance team to abruptly terminate his caper. Here Douver had the added sitting surveillance team to prevent his two crimes from maturing to full bloom and enjoyment. We see no rational difference between a surveillance conducted by a mobile outside team and one aided by a sitting team.

In United States v. DeNormand, 149 F.2d 622 (2nd Cir. 1945) cert. denied 326 U.S. 756, 66 S.Ct. 89, 90 L.Ed. 454 (1945) FBI Agents had conducted a surveillance of a parked truck scene. The defendants held up and gagged the driver and were immediately arrested by the FBI Agents without ever gaining the driver's seat. The Court stated, p. 624:

> "It cannot be doubted that the parked truck was in the constructive possession of the carrier . . . until the moment its employee . . . was seized by the appellants. By that act they deprived the carrier of power to exercise control or dominion over the truck and acquired such power for themselves; thus whatever possession the carrier or its employee had was transferred to them."

■ So it is here. The parked trailer was in the constructive possession of the carrier, with lawful license in the FBI Agents to be present, until the moment Douver and his associates hitched the tractor and started the transport of the trailer. By that act they took from the carrier and acquired for themselves the power to exercise control and dominion over the trailer and its cargo; thus the constructive possession held by the carrier was transferred to actual possession in them. From that moment

the destiny of the trailer and its cargo of goods and men was subject to only the will of Douver and his co-defendants, until overcome by the force of their discovery of the secreted surveillance team.

Assuming that the sitting surveillance team held some recognizable right of possession and control other than that of watchmen on behalf of the carrier, such possession does not mitigate or absolve the unlawful seizure, transportation, dominion and control of the trailer and its cargo actually acquired and exercised by Douver and his co-defendants.

### HARRIS' APPEAL

Harris presented to the District Court and to us here two issues:

First, that the indictment failed to allege a "taking" from one of the places enumerated in 18 U.S.C. § 659, nor did it allege a "taking" from the "stream of commerce".

Second, the same and identical issue and question raised and presented in Douver's appeal.

### DISCUSSION

We conclude that since the issue and question was determined adverse to Douver, the same issue and question must be determined adversely to Harris.

■ A perusal of the allegations in the respective counts as delineated above and the provision of 18 U.S.C. § 659 reveals the first issue and contentions thereunder to be without merit. An indictment which states the charges substantially in the language of the statute is an approved practice. Hopkins v. United States, 405 F.2d 770 (9th Cir. 1969); Dunson v. United States, 404 F.2d 447 (9th Cir. 1968). See also, United States v. Thomas, 396 F.2d 310 (2nd Cir. 1968); United States v. Maddox, 394 F.2d 297 (4th Cir. 1968).

## HARRIS, JR.'S APPEAL

Harris, Jr. presented to the District Court and to us here two issues:

First, the same and identical question raised and presented in Douver's appeal.

Second, that the evidence before the jury failed to prove a "taking" from the Union Terminal Warehouse—the place named in the indictment.

For the same reason given in Harris' appeal we conclude the first issue and question must likewise be determined adversely to Harris, Jr.

The gist of Harris, Jr.'s contentions under the second issue is that the goods were at all times within the trailer and there was no evidence that the goods had even been located in Union Terminal Warehouse. No authority is given in support.

■■ 18 U.S.C. Section 659 does differentiate a "motor truck, or other vehicle" from a "storage facility", "platform" or "depot". Accordingly, any appropriate designation of such place must consider the attending facts and circumstances. A moveable tractor and trailer on the road is a "motor truck or other vehicle". A parked trailer in cargo working position and containing cargo at a "platform" of a warehouse blends into and becomes a part of the warehouse. The location or "starting point" "from" which the goods were taken. Otherwise, the narrow construction of the statute urged by Harris, Jr. would reduce the language to an absurdity. Narrow readings of the language of the statute have been rejected in United States v. DeFina, 315 F.2d 362 (2nd Cir. 1963); United States v. D'Antonio, 342 F.2d 667 (7th Cir. 1965); Sterling v. United States, 333 F.2d 443 (9th Cir. 1964). So do we here. See, particularly, United States v. Padilla, 374 F.2d 782 (2nd Cir. 1967).

Douver's, Harris' and Harris, Jr.'s several enlargements on bail are each ordered revoked, effective now.

Nos. 72–2024, 72–2025 and 72–2026 are each affirmed.