UNITED STATES of America,
Plaintiff-Appellee,

v.

Noble C. BEASLEY,
Defendant-Appellant.

No. 74–1338.

United States Court of Appeals,
Fifth Circuit.

Sept. 5, 1975.

Rehearing and Rehearing En Banc
Denied Oct. 14, 1975.

Jonathan Shapiro, Boston, Mass., for defendant-appellant.

Charles S. White-Spunner, U. S. Atty., Irwin W. Coleman, Jr., Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before COLEMAN, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Noble C. Beasley, James H. Finley, Roy S. Matthews and Reginald Wilson, were jointly indicted for conspiracy to distribute heroin in Mobile County, Alabama, from October 1, 1970 until August 31, 1972 in violation of 21 U.S.C. § 846. Beasley and Finley were also charged in separate counts of the same indictment with making and subscribing false income tax returns—Beasley for the calendar years 1970 and 1971, and Finley for the year 1971—and for willful evasion of income taxes for the calendar year 1971.[1] Beasley's three codefendants pleaded guilty during the course of trial. Beasley did not. The jury found him guilty of conspiracy, filing a fraudulent tax return and tax evasion. Based upon this

---

1. During trial the charge against Beasley for filing a false return for the 1970 tax year was dismissed.

verdict the court sentenced him to consecutive terms totaling 23 years.

Through new counsel in this court, Beasley attacks the court's refusal to sever his trial from that of the other three codefendants; the correctness of the court's charge to the jury; the legal sufficiency of the indictment; the methodology, accuracy, and sufficiency of the government's proof on the tax counts; the court's refusal to require production of exculpatory evidence; the sentences imposed; and the limitation on cross-examination of the government's chief witness.

■ Several of these assignments demonstrate error by the trial court but none were the subject of objections at trial. Thus, their impact must be tested under the strict standards of plain error. F.R.Crim.P. 52(b). "The rule is invoked only where the error complained of seriously affects the fairness or integrity of the trial and the appellate court must take notice of it to avoid a clear miscarriage of justice." *Accord, Moore v. United States*, 399 F.2d 318, 319 (5th Cir. 1968), *cert. denied,* 393 U.S. 1098, 89 S.Ct. 893, 21 L.Ed.2d 789 (1969); *Mims v. United States*, 375 F.2d 135, 147 (5th Cir. 1967); *United States v. Resnick*, 488 F.2d 1165 (5th Cir. 1974). Each case must be judged upon its own individual facts in making the determination. *E. g., United States v. Barcenas*, 498 F.2d 1110, 1113 (5th Cir. 1974). Finding that none of these errors so affected Beasley's substantial rights as to warrant a new trial, we affirm except as to his fraudulent tax return sentence.

## I. SEVERANCE

From the outset, Beasley asserted that his trial should be severed from any trial of the other three coindictees since their joinder was improper under Fed.R.Crim.P. 8(b). This rule permits joinder in an indictment only where the defendants' alleged violations of law "have arisen out of the same act or series of acts." The government insists that the indictment satisfies Rule 8(b) since the proof of the conspiracy provides a source for income unreported by Beasley and Finley and joinder of the separate tax counts was necessitated by the fact that it was not known prior to trial whether Beasley or Finley would admit to ownership of two automobiles purchased during the tax year at issue—the titles to which were in Finley, but Beasley was paying for them.

■ The trial court's refusal to sever under Rule 8(b) was correct. Joinder of separate income tax offenses against coconspirators also charged in the indictment on that conspiracy is proper where the underlying crime generated the alleged income tax violations. *United States v. Issacs*, 493 F.2d 1124, 1158–59 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974); *United States v. Roselli*, 432 F.2d 879, 899 (9th Cir.), *cert. denied,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828.

■ Beasley argues in the alternative that he was entitled to a discretionary severance under Fed.R.Crim.P. 14. *United States v. Marionneaux*, 514 F.2d 1244 (5th Cir. 1975). *Tillman v. United States*, 406 F.2d 930, 933 n. 5 (5th Cir.), *vacated on other grounds,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969). We find no abuse of discretion.

The government asserts that in any event Beasley was effectively granted a severance through the acceptance of guilty pleas from all three of his codefendants before his case went to the jury. This is a non sequitur. Indeed, the strong probability of prejudice to Beasley emanating from the guilty pleas of all three of his codefendants casts a substantial shadow on the fairness of the trial proceedings. Wilson and Matthews, coindictees on the conspiracy count both entered guilty pleas on the third day of trial. Beasley immediately requested but was denied both a mistrial and a continuance. Three trial days later Finley, Beasley's coindictee on the conspiracy count and indicted on separate counts of tax evasion and filing a false

tax return, entered a plea of guilty on the tax evasion count in exchange for the prosecution's dismissal of the other two counts. At this point, Beasley renewed his motion for a mistrial, or in the alternative for a continuance. Again the trial court refused both. Beasley thus the sole defendant remaining when the case went to the jury, now contends that, although the codefendants' pleas were taken outside the jury's presence, the court's failure to explain their absence during the remainder of trial probably led to a jury assumption that the others had pleaded guilty. He fears that the jury erroneously took this assumption of their guilt into account when weighing his guilt.

This was a lengthy trial. As the evidence before the jury mounted, defendants began to disappear without explanation. It is possible that some jurors may have attributed their absences to dismissal, severance, mistrial, illness or some condition short of confessed guilt. However, they were told nothing of the reasons why Beasley's case alone remained for their consideration, nor were they advised of what they were to make of the fact that the others were gone in judging Beasley's case. It is thus equally possible that the jury surmised that pleas of guilty caused the disappearance of Matthews, Wilson and Finley. If this is what they thought, did it affect their weighing of Beasley's guilt?

■ "Most experienced trial judges think the best, safest and fairest procedure to all is a simple and honest statement to the jury as to why codefendants are no longer such."[2] *United States v. Jones*, 425 F.2d 1048, 1054 (9th Cir. 1970), *cert. denied*, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970). Indeed, in the absence of some stated reason for a codefendants departure, a jury might speculate that a guilty plea has been entered which implicates all the defendants. *United States v. Crosby*, 294 F.2d 928,

948 (2nd Cir. 1961), *cert. denied*, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962); *Osborne v. United States*, 371 F.2d 913, 924 (9th Cir. 1967), *cert. denied*, 387 U.S. 946, 87 S.Ct. 2082, 18 L.Ed.2d 1335 (1967). A statement advising the jury that a codefendant has pleaded guilty coupled with an instruction that such plea cannot be considered as evidence of the guilt of the remaining defendant will prevent improper inferences that the codefendants' absence has something to say for the remaining defendant's guilt. *See United States v. Earley*, 482 F.2d 53, 59 (10th Cir.), *cert. denied*, 414 U.S. 1111, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973). In every case, they surely assist the jury in keeping the "condition of the record" straight. *United States v. Soares*, 456 F.2d 431 (10th Cir. 1973).

■ The factors warranting the issuance of an insulating instruction on the trial of the case at bar are several. First, one of the counts in the indictment named the four defendants as the only identified persons charged with a conspiracy to distribute heroin. The crime of conspiracy by its very nature may lend itself to an improper jury finding of guilt by association with those found to be participants in the conspiracy rather than the required finding of guilt based upon proof beyond a reasonable doubt that the defendant participated in the conspiracy. This danger of transferred guilt is acute in this case where the evidence against the sole remaining defendant repreatedly refers to his relationship with persons who have suddenly and unexplainedly disappeared from the trial. "The potential prejudice of such an occurrence is obvious . . ." *Hudson v. North Carolina*, 362 U.S. 697, 702, 80 S.Ct. 1314, 1317, 4 L.Ed.2d 1500 (1960). *See United States v. Kimbrew*, 380 F.2d 538, 540 (6th Cir. 1967); *United States v. Dardi*, 330 F.2d 316, 332–333 (2nd Cir.), *cert. denied*, 379 U.S. 845, 85 S.Ct. 50, 13

---

2. There is also authority for not disclosing the entry of pleas of guilty in a case such as this. See cases cited in Wright, Federal Practice and Procedure § 171. However, these cases all involve instances in which the court did give the jury cautionary instructions not to consider the absence of codefendants in determining the guilt of those who remained.

L.Ed.2d 50 (1965).[3] Furthermore the Supreme Court, in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), has taught that in a conspiracy case involving numerous defendants with various degrees of involvement in the confederation, the possibilities of injustice to particular individuals becomes so great that extraordinary precaution is required in the giving of instructions which will ensure that an individual defendant does not lose his identity in the mass.

Secondly, the possibility of confusion, if not prejudice, existed as to the tax counts. Even though Beasley was charged separately, Finley too was charged with the crimes of tax evasion and filing of a false return for the same year. The evidence submitted by the prosecution at trial to show expenditures by Beasley actually included some items (most notably the two automobiles) which were titled to Finley. Thus, through the proof, each was implicated in the separate tax case of the other i. e., if the jury felt that Finley had pleaded guilty to the tax evasion charge then they may have felt compelled to give this factor some significance in weighing the evidence on the tax counts against Beasley. The possibilities of prejudice are clearly present.

 The thorough efforts of appellate counsel aided by calm reflection and hindsight, while demonstrating the propriety of a cautionary instruction, cannot supply the lack of a timely request for it. If such a request had been made it would have been reversible error to refuse to give it. However, we may reverse for the trial judge's failure to instruct *sua sponte* only upon a finding of plain error. F.R.Crim.P. 30, 52(b). *E. g.*, *United States v. Rojas*, 502 F.2d 1042, 1044 (5th Cir. 1971). *See United States v. King*, 505 F.2d 602 (5th Cir. 1974) (King reviews our prior holdings on charges of plain error where the fact of a coconspirator's guilty plea was made known to the jury but unaccompanied by a cautionary instruction).

In this case, Beasley's counsel may have opted not to request such an instruction as a matter of trial tactics, feeling that to emphasize the admitted guilt of those others named in the indictment would have been even more prejudicial. *See United States v. Stallings*, 273 F.2d 740, 741 (2nd Cir. 1960); *United States v. Kohne*, 358 F.Supp. 1053, 1062–63 (W.D.Pa.), *aff'd*, 485 F.2d 682, 487 F.2d 1395, *cert. denied*, 417 U.S. 918, 94 S.Ct. 2624, 41 L.Ed.2d 224 (1974). Upon entry of the guilty pleas counsel specifically requested either a mistrial or a continuance but never gave the slightest indication that a cautionary instruction might be desired. Additionally, the trial court, although not in reference to the absence of the other defendants, did instruct the jury on two occasions during the trial that the guilt or innocence of each defendant was to be considered separately and independently, just as if each was being tried separately and alone.[4] In light of these instructions and

---

3. During the course of a lengthy trial in *Dardi*, in which several of the 12 codefendants pleaded guilty at different points during the trial, the Second Circuit held that "[a]lthough taken in the jury's absence, the jury could not have been unaware of these pleas". 330 F.2d at 333.

4. At one point, the court charged:

. . . Ladies and gentlemen of the Jury, as I stated to you at the inception of this trial I will again state to you, that each of the Defendants charged in each Count is entitled to your separate consideration as to whether he is guilty or innocent of the charges in that Count. Each Defendant is innocent of that charge until he is proven to the required degree that he is guilty and you must consider that question separately and independently as to each of the Defendants, though they are being tried together, each is entitled to the same kind of consideration on your part as if each were being tried separately and alone. You may not assume that all are either guilty or not guilty simply because they are being tried together. It is your duty to give separate and personal consideration to the case of each individual Defendant. When you do so, you must and should analyze what evidence this case shows with respect to that individual, leaving out of consideration entirely admitted

the real possibility that defense counsel's failure to request a similar instruction at the time the guilty pleas were entered was a purposeful course of conduct, we cannot say that the court, *sua sponte,* should have given the instruction appellate counsel now thinks would have been appropriate. Plain error must be built upon a base of sure prejudice. Such a foundation is lacking here.

## II. JURY INSTRUCTIONS

In this court, Beasley assigns several errors in the trial court's charge to the jury. At trial, however, counsel failed to object to those instructions given or to request those instructions which Beasley's new counsel now contends were erroneously omitted. Again, we must examine these asserted mistakes only for plain error. Confined by plain error strictures, and viewing the charge as a whole and the evidence most favorably toward the government as we must, we conclude that no reversible error was committed.

### A. Accomplice Testimony

 Defendant's most vociferous attack upon the court's instructions is lodged against the omission therefrom of a cautionary charge on accomplice testimony. In a case such as this, where the government relies solely upon the testimony of admitted coconspirators in attempting to prove defendant's participation in that conspiracy, a cautionary instruction is clearly warranted. The "law is in step with human nature when it ordinarily recognizes that testimony from this course [*sic*] has to be scrutinized most carefully. That results normally .in the giving of a traditional instruction" admonishing the jury to accept the testimony of such witnesses with the utmost of caution. *Williamson v. United States,* 332 F.2d 123, 131 (5th Cir. 1964). "When the accomplice testimony constitutes the .only damning evi-

dence against a defendant, the exigency for a cautionary instruction is even more compelling." *Tillery v. United States,* 411 F.2d 644, 647 (5th Cir. 1969). Beasley opines that the need of a cautionary accomplice instruction was even more critical in this case where two accomplice witnesses, Dickie Diamond and Barbara Heron, testified, both were in protective federal custody and proffered conflicting testimony. The question is whether its omission was plain error.

In *Williamson* and *Tillery* we held the failure to give the accomplice instruction to be plain error where the accomplice testimony was both uncorroborated and either incredible or unreliable. This *Williamson-Tillery* rule is inapposite on the facts before us.

Admittedly, there is no independent corroborative evidence for Diamond's and Heron's testimony. The government's argument that Diamond's testimony was corroborated by introduction of motel registration cards proving his presence in Mobile at various times during the life of the conspiracy and by introduction of money orders payable to him assertedly in payment for protection is circular. Diamond testified that he came to Mobile for other purposes during this period, thus making the supportive value of these registration cards directly dependent on his testimony. Similarly, he admitted that one of the money orders introduced was for payment of a musical group he was promoting. The others could have also involved transactions unrelated to Beasley. Absent Diamond's testimony neither the registration cards nor the money orders can be considered as probative evidence of the reality of the alleged conspiracy.

There is, however, no substantial issue on the reliability or credibility of Diamond's or Heron's testimony. Thus the second prong of the *Williamson-Tillery* test has not been satisfied here. Beasley's contention that discrepancies in Di-

solely against some other Defendant or Defendants. Each Defendant is entitled to have his case determined from the evidence

as to his own act and statement and conduct and any other evidence in the case which may be applicable to him.

amond's and Heron's testimony rendered their credibility highly suspect, is specious. The conflict attacked here is not the sort contemplated by *Williamson* and *Tillery* to elevate to plain error status a trial court's failure to instruct on accomplice testimony *sua sponte*. In both *Williamson* and *Tillery*, there was an indication that, because of previous conduct on the part of the witness, the testimony proffered was particularly suspect. There is no such indication here. More particularly, in *Williamson*, a case charging misapplication of federally insured bank funds, we held that a number of circumstances cumulatively clouded the reliability of the accomplice's testimony. The circumstances included the accomplice's obvious error on the initiation date of the scheme and his confusion concerning the overdraft which allegedly necessitated the scheme; testimony by another government witness that the alleged overdraft would have been discovered; realization that the scheme could have been worked by the accomplice alone; and evidence implicating the accomplice in efforts to sell evidence to the government. In *Tillery*, the accomplice's testimony at trial was tainted by three prior statements, all contradictory. In the case at bar, the only discrepancies involve the questions of who introduced Diamond to Beasley, whether it was Heron as Diamond testified or Diamond's wife as Heron remembers; and whether Diamond checked Beasley's background through Heron, Diamond stating that he did, Heron denying this. Both discrepancies are inconsequential, and may be attributable to mere failure to remember correctly because of relative unimportance of the issue. Heron's disagreement that Diamond questioned her concerning Beasley's background may simply evince her failure to realize the import of some seemingly innocent conversations between them. In any event, the discrepancies neither detract from nor taint the testimony of each clearly implicating Beasley's involvement in the wholesale purchase and retail distribution of heroin in the Mobile area during the period specified in the indictment.

Defendant's further contention that the testimony of Diamond and Heron is obviously unreliable since each is corroborative of the other on only a few points is also without merit. The variations could result from their roles as separate sources of supply rather than from what Beasley would claim is a discrepancy in their recollection of joint activity. See Section III *infra*. Their testimony is sufficient to support the jury's verdict, for the law permits conviction on the uncorroborated testimony of even a single accomplice. *E. g., Caminetti v. United States,* 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442 (1917); *United States v. Stanley,* 433 F.2d 637, 638 (5th Cir. 1970).

The hazard of prejudice emanating from the omission of the cautionary accomplice instruction was magnified, Beasley continues, by inclusion of a "presumption of truthfulness of witnesses" instruction[5] and then further compounded by a general instruction that "a presumption is an inference which the law requires the jury to make from particular facts."

In *McMillen v. United States,* 386 F.2d 29 (1st Cir. 1967), *cert. denied,* 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968), the First Circuit held that where the accomplice testimony was uncorroborated, and the trial court gave the presumption of truthfulness instruction, the failure to give an accompanying cautionary accomplice instruction was plain error. Under the facts before us, however, we do not find that Beasley's right to a fair trial was substantially affected by omission of the accomplice charge.

**5.** This instruction provided:

> We start out with the presumption that every witness speaks the truth. However, this presumption may be overcome in several ways, such as the manner in which the witness testified, by the character of his testimony, by the contradictory evidence, or by his motives.

The purpose of an accomplice instruction, is to assure that the jury realizes that an admitted accomplice's testimony may be affected by the hope of a favor or conversely by the fear of reprisal from the government and considers this factor in weighing such person's testimony. That purpose was effectuated here. The court, in both its opening and closing instructions, generally charged that any witness' motive for giving particular testimony, as well as the facts and circumstances surrounding the giving of that testimony, must be considered in weighing the value to be attached to that person's testimony. This instruction did not stand alone in the jury's mind. Defense counsel's closing remarks repeatedly alluded to these two person's self interest in proffering testimony bolstering the government's case. When the instructions are coupled with counsel's immediately preceding argument, it can be seen that the jury had it amply brought home to them that Diamond's and Heron's testimony had to receive strict scrutiny for credibility and reliability. Also helpful to the jury's understanding was that part of the government's opening argument which pointed out that both witnesses were in protective federal custody and that Diamond had been convicted of murder. Furthermore, the defense on its turn assailed Diamond's motive for testifying as a government witness and reiterated his criminal record.[6] Then on three separate occasions during summation, the defense reiterated Diamond's and Heron's motives for giving testimony favorable to the government and implored the jury to assess their credibility with this fact in mind.

The jury was thoroughly informed of the accomplices' background, relationship to the government and motive for testifying as government witnesses. The omission of a single specific instruction that the jury weigh such testimony with care was not plain error. Certainly it would have been better to so instruct, and refusal upon request would have been reversible error, but under the circumstances of our case defendant's substantial rights were not prejudiced by its omission. *See United States v. Jones,* 425 F.2d 1048, 1055–56 (9th Cir.), *cert. denied,* 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970); *United States v. George,* 319 F.2d 77 (6th Cir.), *cert. denied,* 375 U.S. 942, 84 S.Ct. 349, 11 L.Ed.2d 273 (1963).

We view the synergistic effect of giving the presumption of truthfulness instruction in the absence of a cautionary accomplice instruction as greatly ameliorated here because of the fact that Beasley testified in his own behalf. Applying the presumption of truthfulness instruction literally, this jury was as bound to believe Beasley's version as that recounted by Diamond and Heron. Similarly, the inclusion of the accompanying "presumption is an inference which the law requires the jury to make" language was not so prejudicial in the case at bar as to rise to plain error status. *See Knapp v. United States,* 316 F.2d 794, 795–96 (5th Cir. 1963) (Brown, concurring specially).

*B. Willfulness*

Defendant complains that this charge contained the same instruction we held to be plain error in *Mann v. United States,* 319 F.2d 404, 409 (5th Cir.), *cert. denied,* 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474.[7] In *Mann* we con-

---

**6.** During direct examination Diamond admitted that he had been convicted of grand larceny, and of narcotics violations in two states, and that he was in protective federal custody. Upon cross examination he again recounted his prior criminal activities, admitted that while he served as a government witness he did not have to stay in prison, and that in exchange for his testimony he expected not to be charged for any crime relating to his role in the Mobile conspiracy. While on the stand Heron admitted that she was in protective federal custody and being taken care of by the government.

**7.** The instruction objected to provided:

. . . It is as a general rule reasonable to infer that a person ordinarily intends all of

cluded that the "So unless the contrary appears from the evidence" language erroneously shifted the burden on the issue of intent from the prosecution to the defendant. Id. at 409. Intervening decisions, however, have delineated certain exceptions to the Mann rule. See United States v. Durham, 512 F.2d 1281 (5th Cir. 1975), and cases cited therein. One of these exceptions involves the inclusion of a curative instruction in the charge.[8] In United States v. Jenkins, 442 F.2d 429, 437–38 (5th Cir. 1971), we held that any harmful effect from the Mann instruction was vitiated by an accompanying curative instruction. In United States v. DeSimone, 452 F.2d 554, 556 (5th Cir. 1971), cert. denied, 406 U.S. 959, 92 S.Ct. 2067, 32 L.Ed.2d 346 (1972), we held that a Mann error claim was without merit where the curative instruction of the type in Jenkins was given four times. That is precisely our case. The curative Jenkins-type instruction was given four times here. See also, United States v. Durham, supra at 1283. Thus, viewing the court's charge as a whole, we hold that inclusion of the Mann-type instruction was not plain error.

### C. Opening Net Worth

The court's instruction concerning the extent of the government's burden to refute plausible defense explanations of opening net worth only made reference to a burden on the government to rebut explanations advanced during investigation.[9] Beasley claims that this instruction erroneously distinguishes between explanations given before and during trial, thereby denigrating the effect of Mrs. Beasley's cash-hoard explanation which was not offered until trial. Under the facts of this case, in which no explanation was tendered until Mrs. Beasley took the stand, the court's specific reference to the government's duty to refute explanations during investigation could well have prejudiced Beasley's rights. Where the evidence at trial was devoid of any attempt by the defendant to offer an explanation during the investigatory period, the description of the government's burden either has no relation to the proof or it is a direction to the jury to give no effect to Mrs. Beasley's in-trial explanation. While analytically it can be seen to be error, in the absence of an objection which would surely have produced correction, we decline to reverse on this portion of the charge.

### D. Lesser Included Offense

Beasley contends here for the first time that his rights were prejudiced by the trial court's failure to instruct the jury that if they found the amount of taxes evaded was not "substantial" they might find defendant guilty of only the lesser charge of willfully filing a false

---

the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the evidence in the case leads the jury to a different or contrary conclusion, the jury may draw the inference and find that the accused intended all of the natural and probable consequences which one standing in like circumstances and possessing like knowledge would reasonably have expected to result from any act knowingly done or knowingly omitted.

8. This instruction iterates the maxim that the law never imposes on a defendant the burden or duty of calling any witnesses or producing any evidence.

9. Specifically, the court charged:

In determining whether or not the claimed starting point net worth is reasonably accurate you may consider whether or not the prosecution has run down all reasonable leads suggested to the agents which might tend to establish the defendant's innocence, and has explored any explanations advanced by the defendant during the investigation. If the jury is satisfied that all leads and explanations have been satisfactorily exhausted or refuted the jury may consider this circumstance in determining whether the claimed starting point net worth included all of the defendant's assets. If the jury should find that the government's investigation has failed to refute what seem to be plausible explanations advanced by the defendant during the course of the investigation, such failure, of course, should be considered in determining the accuracy of the figure claimed by the prosecution to show the defendant's net worth at the starting point.

income tax return. We find no prejudice to Beasley's rights in this particular.

The making and subscribing a tax return without believing it to be true and correct, made criminal by 26 U.S.C. § 7206(1), is also an offense included within the crime of willful attempt to evade taxes, as defined by 26 U.S.C. § 7201. *United States v. Lodwick,* 410 F.2d 1202, 1205–06 (8th Cir.), *cert. denied,* 396 U.S. 841, 90 S.Ct. 105, 24 L.Ed.2d 92 (1969); *Hartman v. United States,* 245 F.2d 349, 351–52 (8th Cir. 1957); *Gaunt v. United States,* 184 F.2d 284, 288 (1st Cir. 1950), *cert. denied,* 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed.2d 662 (1951). Section 7206(1) makes it a felony to make and subscribe a tax return without believing it to be true and correct as to every material matter, whether or not the purpose was to evade or defeat the payment of taxes. The purpose of this statute is to impose penalties for perjury upon those who willfully falsify their returns regardless of the tax consequences of the falsehood. Conviction under § 7201 must rest upon proof of an intent in some manner to evade or defeat a tax which is due. *Gaunt v. United States, supra.* The key difference in the two statutes is the additional element found in § 7201 of "intent to evade or defeat" taxes.

The court's failure to specifically describe the lesser included offense was not error here. It did fully and accurately charge the jury on the elements of each crime, including the necessity that the jury conclude that the amount of tax evaded was substantial to warrant a conviction under § 7201. Furthermore, the charge pointed out that a finding that the false return was filed only with knowledge of its inaccuracy was a violation of § 7206(1). Under this set of instructions any reasonable-minded juror would know the filing of a false return which did not evade or defeat a substantial amount of tax could only result in conviction for the filing of a fraudulent return.

### E. Elements Of The Crime

Finally, Beasley complains that the court's failure to define the crime which was the alleged object of the conspiracy (distribution of heroin) was error, as was its failure to define such terms as "manufacture", "dispense", "distribute", or "possess with intent to manufacture, distribute, or dispense", contained in § 841(a)(1). Both complaints are without merit. In charging the jury on the conspiracy count, the trial court read both the indictment and § 841(a)(1) which explicitly sets forth the overt acts prohibited thereunder and charged here. This recitation, coupled with the court's further explanation of the essential elements required to convict for participation in an unlawful conspiracy, adequately informed the jury of the requisites to a finding of guilty on the conspiracy count. Additionally, such terms as "dispense" and "distribute", being within the common understanding of a juror, do not require trial court elaboration. *United States v. Corckett,* 506 F.2d 759, 762 (5th Cir. 1975).

### III. INDICTMENT

Beasley contends that the conspiracy count of the indictment was vague and indefinite, failed to state an offense, and did not apprise him of the charges he must defend against. More particularly, Beasley complains that Count I [10] failed

---

**10.** Count I of the indictment charged:

1. That from on or about October 1, 1970, and continuing thereafter up to August 31, 1972, in Mobile County, within the Southern Division of the Southern District of Alabama, NOBLE C. BEASLEY, JAMES H. FINLEY, ROY S. MATTHEWS and REGINALD WILSON, did wilfully, knowingly and unlawfully combine, conspire, confederate and agree together, and with each other, and with divers other persons to commit certain offenses against the United States of America, to-wit:

(a) To knowingly and intentionally unlawfully distribute, manufacture and possess with intent to distribute heroin, a Schedule I narcotic drug controlled substance, in violation of Section 841(a)(1), Title 21, United States Code.

2. It was a part of said conspiracy that the defendants would seek out divers persons to obtain said heroin and cause same to be

to allege a single overt act; or to specify the time within the two-year period in which the conspiracy was formed or perpetrated, the respective roles played by the four defendants, or the identity of the "divers other persons" allegedly involved.

■ First, defendant asserts that the indictment, although tracking the language of the statute, is still insufficient under Rule 7(c), Fed.R.Crim.P., having omitted a statement of times, places, facts and circumstances defining the conspiracy alleged or an explanation of the object of the conspiracy. To satisfy Rule 7(c), however, the indictment need only: (1) contain the elements of the offense intended to be charged, (2) apprise Beasley of what he must be prepared to meet, and (3) protect him from being again placed in jeopardy for same offense. *Hagner v. United States,* 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *United States v. Mekjian,* 505 F.2d 1320, 1324 (5th Cir. 1974). The same principles are used to judge the sufficiency of a conspiracy count. *Grene v. United States,* 360 F.2d 585, 586 (5th Cir. 1966), *cert. denied,* 385 U.S. 978, 87 S.Ct. 522, 17 L.Ed.2d 440 (1966). Since Count I of the indictment meets each of these essentials it is sufficient.

■ Beasley verbalizes the contention that there is a variance between the offense charged in the indictment and the proof offered. In reality he attacks

the government's failure to specifically name Dickie Diamond and Barbara Heron in the indictment. Both were admitted coconspirators and the prosecution's key witnesses on the conspiracy count.[11] Beasley contends that, construed in the worst light for his case, the evidence may have shown separate conspiracies between Beasley and Diamond and Beasley and Heron, however, it certainly did not establish a single conspiracy involving any of the other three coindictees or both Diamond and Heron. He is correct in his base premise—the evidence must be taken most favorably toward the government's case. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). However, such an examination reveals a single overall conspiracy among Beasley, Finley, Matthews, Diamond, Heron, and others to distribute heroin within the Mobile area during the period specified in the indictment. The testimony by Diamond and Heron evinces their roles as suppliers to Mobile, with Beasley as "captain" in charge of the Mobile operation, Matthews as head of security and Wilson as a "lieutenant" on Beasley's staff.[12] "[I]n an instance such as the one presented by this case, with overlapping membership and activities all directed toward a common goal, most courts have found, as we do here, sufficient evidence to uphold a jury verdict reflecting a single conspiracy." *United States v. Perez,* 489 F.2d 51, 63 (5th Cir. 1973), *cert. denied,* 417

brought in or transported into Mobile County from other states, and said heroin would then be cut or mixed, capped, and distributed by divers persons; in violation of Title 21, United States Code, Section 846.

11. "In effect, appellants are complaining because the government failed to provide them with a list of prospective witnesses and with information sought in their motion for a bill of particulars." *United States v. Nakaladski,* 481 F.2d 289, 297 n. 5 (5th Cir.), *cert. denied,* 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 469 (1973). Just as in *Nakaladski,* defendant requested a bill of particulars, and, as there, we find no abuse of discretion in the trial court's refusal to require the government to provide a list of witnesses. *Accord, United States v. Moseley,* 450 F.2d 506, 510 (5th Cir. 1971); *United*

*States v. Hancock,* 441 F.2d 1285, 1286 (5th Cir.), *cert. denied,* 404 U.S. 833, 92 S.Ct. 81, 30 L.Ed.2d 63 (1971). We note this court's recent decision in *United States v. Briggs,* 514 F.2d 794 (5th Cir. 1975), holding that a grand jury exceeded its power and authority in naming unindicted coconspirators in an indictment.

12. The evidence as to Finley's involvement makes a stronger case. Even assuming, but without deciding, that the evidence revealed Finley was involved only in a separate conspiracy, outside of the Mobile area, sufficient additional proof exists to warrant a finding that Beasley and the others were involved in a conspiracy to distribute heroin in Mobile as charged. If a finding of variance could be made it would in no way prejudice Beasley's rights.

U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974) (citations omitted). *See United States v. Agueci,* 310 F.2d 817, 826 (2nd Cir. 1962), *cert. denied,* 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963).

■ Beasley's overt-act and time-and-places arguments are without merit. In response to Beasley's motion for a bill of particulars the government, being unable to pinpoint exact dates or times of conspiratorial meetings did separate the overall period into parts—*i. e.,* first, meetings in the middle of 1970; then three or four meetings in the October to December 1970 period; then 10 meetings or conversations from January 1971 through December 1972; and then four more meetings in 1972. All such meetings and conversations were purportedly in Mobile, Alabama. The indictment having given this plain idea of the times, coupled with knowledge of the place—*i. e.,* Mobile, we cannot say that the trial court abused its discretion in refusing to require further details. *E. g., United States v. Baca,* 494 F.2d 424, 426 (10th Cir. 1974); *United States v. Hosier,* 50 F.2d 971 (5th Cir. 1931).

■ Beasley's complaint that the indictment failed to allege a single overt act committed in furtherance of the conspiracy is correct, but demonstrates no error. While the general conspiracy statute, 18 U.S.C. § 371, requires the doing of "any act to effect the object of the conspiracy", as an element of the crime of conspiracy, 21 U.S.C. § 846 under which this indictment was drawn contains no such language.[13] *Irizarry v. United States,* 508 F.2d 960, 966 N.5a. (2nd Cir. 1974); *United States v. DeViteri,* 350 F.Supp. 550, 552 (E.D.N.Y.1972). As noted in *DeViteri,* this was the law prior to enactment of the Drug Abuse Prevention and Control Act of 1970 ac-

cording to those courts reaching the issue in cases charging conspiracies under the statute's predecessors.[14] There is no evidence of Congressional intent to change this interpretation in any declared purpose or legislative history of the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq. *See* 1970 U.S.Code Cong. & Admin.News at p. 1437.

## IV. TAX COUNTS

Beasley was charged with willfully and knowingly making, subscribing and signing a false income tax return for the calendar year 1971, in violation of 26 U.S.C. § 7206(1) and with willful income tax evasion for the same year, in violation of 26 U.S.C. § 7201. On appeal he argues that acquittal was required on these counts as the government failed to establish his opening net worth with reasonable certainty. More particularly, Beasley contends that the government's use of a zero figure as the opening cash on hand in its computations under the net worth-cash expenditures method was arbitrary since (1) the government made no effort to ascertain his wife's opening cash on hand, (2) the government failed to refute his wife's testimony of a substantial opening cash hoard, and (3) the figure was otherwise unsupported by the evidence. These claims are without merit. In addition, Beasley failed to renew his motion for acquittal at the close of all the evidence. *E. g., United States v. Edwards,* 488 F.2d 1154, 1158 (5th Cir. 1974).

■ The establishment of the opening figure was sufficient under *Holland v. United States,* 348 U.S. 121, 135–36, 75 S.Ct. 127, 99 L.Ed. 150 (1954). The revenue agents investigating the case checked all items of public record con-

---

**13.** 21 U.S.C. § 846 provides:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

**14.** *United States v. Murray,* 492 F.2d 178, 192 (9th Cir. 1973), *cert. denied,* 419 U.S. 942, 95 S.Ct. 210, 42 L.Ed.2d 166 (1974); *Hopkins v. United States,* 405 F.2d 770, 772 n. 2 (9th Cir. 1969); *Ewing v. United States,* 386 F.2d 10 (9th Cir. 1967), *cert. denied,* 390 U.S. 991, 88 S.Ct. 1192, 19 L.Ed.2d 1299 (1968); *United States v. Garfoli,* 324 F.2d 909 (7th Cir. 1963).

cerning Mrs. Beasley's holdings, which, under the circumstances was all that they could be expected to do given defendant's refusal to let them interview his wife. Any omissions in the cash-on-hand computations are thus directly attributable to the defendant, not to any deficiency in the investigation. Beasley's reliance upon *United States v. Meriwether,* 440 F.2d 753, 755–56 (5th Cir. 1971), is unwarranted. In *Meriwether,* the IRS only offered Mrs. Meriwether's tax returns for the years at issue. "[They] otherwise made no attempt to ascertain her net worth." Here, the agents exhausted every avenue reasonably available to assess Mrs. Beasley's financial status as of the beginning of the period at issue.

■■■■■■ Second, the government, having traced all leads reasonably susceptible of verification, satisfied its burden of negating all possible non-taxable sources of income. Its position was supported by a review of the Beasleys' joint returns from 1964–71, negating any reasonable possibility that money could have been saved, and by proof of the Beasleys' numerous small loans, taken after the time they allegedly received a sizeable monetary gift from Mrs. Beasley's sister. *See, e. g., United States v. Cook,* 505 F.2d 659, 662 (5th Cir. 1974). Having thus established a prima facie case, the burden was on the defendant to come forward with evidence of a cash hoard. *Holland v. United States, supra,* 348 U.S. at 137–38, 75 S.Ct. 127. All issues of overall credibility of the proof and inferences to be drawn therefrom were properly left to the jury. *See United States v. Newman,* 468 F.2d 791, 794–95 (5th Cir. 1972).

■■■■■■ Third, Beasley cannot assert that the zero opening balance is arbitrary. The government was prepared to establish by Beasley's statements made during the investigation that his opening worth should have been $1,000 but was prevented from doing so by defendant's *Miranda* objection. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Beasley is in no position to

complain of that which his own objections have created. In any event, since the zero figure was used at the end as well as the beginning of the tax year at issue, there would be no prejudice to Beasley's rights. The net worth method of computation depends on increases in assets to reflect income. *United States v. Bush,* 512 F.2d 771 (5th Cir. 1975).

### A. Application Of The Net Worth— Cash Expenditures Method

■■■ Beasley, again raising an issue not pursued at trial, contends that the government overestimated his income for 1971 by $2,372.96, thereby increasing the amount of tax he was charged with evading by 34%, an amount so large as to require reversal. The major source of error, according to Beasley was in the computations indicating the increase in net woth evidenced by Beasley's 1971 purchase of two new automobiles, a 1972 Thunderbird and a 1972 Lincoln Mark IV. We agree that the government made a $1,911.30 overestimation of Beasley's taxable income as represented by purchase of the new automobiles in 1971. However, since absent such overestimation on the automobiles, even coupled with the other $461.66 alleged overstatement, the government's proof still reveals that Beasley paid only $491.46 of a total sum due of $1,707.47. Under these circumstances the duplication did not result in prejudicial error. *Lumetta v. United States,* 362 F.2d 644, 646 (8th Cir. 1966). As a matter of law, a *substantial* amount of tax liability was evaded.

■■■ Mathematical exactitude in proof of expenditures is not required. The government need only show that a "substantial" amount of tax liability was willfully evaded. *E. g., Harris v. United States,* 356 F.2d 582, 585 (5th Cir. 1966); *United States v. Burdick,* 221 F.2d 932, 934 (3rd Cir. 1955), *cert. denied,* 350 U.S. 831, 76 S.Ct. 65, 100 L.Ed. 742 (1955). *Sasser v. United States,* 208 F.2d 535, 539 (5th Cir. 1953). This is not to say that anything less than due care may be used to insure accuracy in the government's calculations or that such calcula-

tions may duplicate expenditures. *United States v. Caserta,* 199 F.2d 905, 908 (3rd Cir. 1952). Unless any such inaccuracy or duplication taints a substantial portion of the total tax allegedly evaded, however, reversal for prejudice is not warranted.

### B. Jury's Use Of Net Worth Calculations

■■■ Beasley does not contest the court's right to allow an accurate schedule of net worth calculations to be taken into the jury room. *Flemister v. United States,* 260 F.2d 513, 516 (5th Cir. 1958). He questions its use here in light of the miscalculation on the expenditure for a new automobile. His problem is that this specific error was not challenged prior to the jury's withdrawal. If objection to the automobile computation had been timely raised, the necessary corrections could have been made before the jury got the schedule. Since the error effects only an insubstantial portion of the total tax allegedly evaded, objection comes too late here.

### C. Imposition Of Consecutive Sentences On Tax Convictions

■■■ The government concedes that the trial court erroneously imposed consecutive sentences for Beasley's conviction for tax evasion and for the lesser included offense of filing a false return. *United States v. Lodwick,* 410 F.2d 1202, 1206 (8th Cir. 1969), *cert. denied,* 396 U.S. 841, 90 S.Ct. 105, 24 L.Ed.2d 92 (1969); *Gaunt v. United States,* 184 F.2d 284, 288 (1st Cir. 1950), *cert. denied,* 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed.2d 662 (1951). Accordingly, we direct the district court to vacate the conviction and three-year sentence for violation of § 7206(1). *See United States v. Newman,* 468 F.2d 791, 796 (5th Cir. 1972), *cert. denied,* 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973).

### V. EXCULPATORY EVIDENCE

On re-cross examination, Dickie Diamond revealed that he had been supplying the Federal Drug Enforcement Administration in New York with information concerning narcotic trafficking along the Eastern seaboard since January, 1971. Having been assured previously by the prosecution that no informers would be used as witnesses in the case, the defense moved for a mistrial or, in the alternative, that either all statements by Diamond in connection with this case be produced or Diamond's testimony be stricken. The prosecution responded that it had no prior knowledge of Diamond's communications with federal agents in New York, and that, in any event, such conversations were unrelated to the case at bar.

During a succeeding chambers conference, Diamond testified as follows. He first gave names and specifics concerning Mobile trafficking in April, 1973, during the investigation leading to this action. In January of 1971 he had said nothing more specific than that Mobile "was a heavy area, lots of drug traffic and corruption." With this additional insight, but subject to the possibility of contrary evidence from contact with the agent in New York who talked with Diamond in 1971, the trial court concluded that Diamond was engaged in activities in Mobile prior to this January 1971 communication; Diamond did not divulge any information concerning Mobile dealings until questioned in April, 1973; and his comment then was only made after the IRS investigation of defendant had revealed the possibility of his involvement with narcotic sales in the Mobile area.

The prosecution subsequently reported that telephonic communication with the agent in New York verified their contention that Diamond had given no information to him concerning persons in Mobile who might be trafficking in drugs. After this announcement Beasley renewed his attack but the court adhered to its prior ruling and refused to permit the defense to subpoena officials of DEA or other government agencies possibly familiar with Diamond's activities or to permit further questioning into this issue

before the jury. Beasley contends that this refusal violated his Sixth Amendment right to confrontation, his Jencks Act right, 18 U.S.C. § 3500, to prior statements by Diamond made to government officials, and his right under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to production of all relevant, favorable material held by the government. All of these contentions are without merit.

■■■■ The Jencks Act requires production of written or recorded *statements* of a government witness in its possession. 18 U.S.C. § 3500(e).[15] For this case, the inquiry becomes whether there were any such statements within the government's possession. In determining the existence of such statements, the trial court is granted substantial latitude, including authority to interrogate the witness, government representatives who might have knowledge of the presence of such a statement or to conduct an *in camera* inspection. *See, e. g., United States v. Bell,* 457 F.2d 1231, 1235 (5th Cir. 1972); *Matthews v. United States,* 407 F.2d 1371, 1376 (5th Cir. 1969), *cert. denied,* 398 U.S. 968, 90 S.Ct. 2177, 26 L.Ed.2d 554 (1970). All of these possibilities were exhausted in the case at bar. The trial court's ultimate resolution of this fact question then must be accorded its full weight under the clearly erroneous test. *E. g., United States v. Bell, supra,* at 1235; *United States v. Blackburn,* 446 F.2d 1089, 1090 (5th Cir.), *cert. denied,* 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1971); *Lloyd v. United States,* 412 F.2d 1084, 1088 (5th Cir. 1969). Our review of the record convinces us that the trial court was not clearly erroneous in concluding that there were

no written or recorded statements by Diamond which had not been proffered to the defense. The court properly based such a finding on its own questioning of Diamond and on assurance by the prosecution that the New York agent had no such statements.[16]

■■■■ Apparently recognizing the possibility that the government might not possess any *statements* by Diamond, Beasley alternatively asserts that the government had other evidence indicating Diamond's identity as an informer in this case which should have been produced under *Brady v. Maryland, supra.* Again, the trial court's efforts to get at the truth formed a sufficient basis for its determination that all relevant evidence concerning Diamond's possible status as an informant in this case had been produced. Mere speculation by Beasley that such materials may be possessed by the government is not enough to require the district court to direct production of original government files for a search to confirm the government's positive denials. *E. g., United States v. Crisona,* 416 F.2d 107, 116 (2nd Cir. 1969), *cert. denied,* 397 U.S. 961, 90 S.Ct. 993, 25 L.Ed.2d 253 (1970); *United States v. Harris,* 409 F.2d 77, 80–81 (4th Cir.), *cert. denied sub. nom., Venning v. United States,* 396 U.S. 965, 90 S.Ct. 447, 24 L.Ed.2d 430 (1969).

■■■■ Similarly, Beasley's contention that the trial court's refusal to permit further cross-examination into Diamond's status as an informer violated his Sixth Amendment right of confrontation is baseless. Considerable evidence before the jury revealed Diamond's vested interest in aiding the government and his

**15.** For Jencks Act purposes, the term "statement" means:

 (1) a written statement made by said witness and signed or otherwise adopted or approved by him;

 (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

 (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.
18 U.S.C. § 3500(e).

**16.** Similarly, the trial court's refusal to require the government to turn over the excised portion of Diamond's statement to the IRS on April 24, 1973 relating to Beasley's involvement in an extortion conspiracy which is the substance of a separate case was not clearly erroneous.

prior criminal record. Fixing the scope of cross-examination is within the ambit of the trial court's discretion and the limits set may only be overturned upon a showing of abuse of his discretion. It was well within the court's discretion to conclude that further inquiry into Diamond's activities as an informer in areas other than Mobile was unnecessary and cumulative.

Affirmed in part, vacated in part, and remanded.