**UNITED STATES of America, Plaintiff,**

**v.**

**Ernest A. WINKLE, Defendant.**

**No. 76–69 Cr. T–K.**

United States District Court,
M. D. Florida,
Tampa Division.

March 8, 1977.

Eleanore J. Hill, Asst. U. S. Atty., Tampa, Fla., for plaintiff.

Bernard H. Dempsey, Jr., Arnold D. Levine, Tampa, Fla., for defendant.

**ORDER**

KRENTZMAN, District Judge.

The Court has for consideration the motion for new trial filed by attorney, Arnold D. Levine, on November 19, 1976, and supplemented by additional grounds filed with the Court February 10, 1977, on behalf of the defendant, Ernest A. Winkle. Said motion, the matters in the file, the testimony relating to said motion and memoranda, and argument of respective counsel have been considered by the Court, and it is of the opinion that it should be, and it is, DENIED.

Count One of the indictment herein charged Mr. Winkle, Leonarda Winkle, Joseph N. Distefano and Alan Colmar with conspiracy to defraud the United States in

---

violation of Title 18, Section 371, United States Code.

Counts Two through Twenty inclusive charged all of the above, except Mr. Colmar, with violations of Sections 2 and 1001, Title 18, United States Code.

Initially, Ernest A. Winkle and Leonarda Winkle, his wife, were both represented by attorney Bernard H. Dempsey, Jr. Shortly before trial Mr. Dempsey moved to be relieved as counsel for Mrs. Winkle citing a conflict of interest, and represented that if she was severed from the trial she would be represented by Mr. Levine. She was severed, testified for Mr. Winkle at trial, and after the verdicts herein the charges against her were dismissed by the government.

Mr. Dempsey represented Mr. Winkle during trial, filed a motion for new trial which was denied September 16, 1976, and appeared with Mr. Winkle at sentencing.

Mr. Distefano was represented by separate counsel, as was Mr. Colmar.

The trial began Thursday, July 22, 1976. The parties had been told that Thursday evening the trial would be continued until Monday, July 26 to allow the Court to attend to other pending matters. Voir dire selection of jurors began about 9:30 a. m. All parties and attorneys were present, except Mrs. Winkle, and were introduced to the jury. After the noon recess the Court was told at a bench conference that Mr. Colmar intended to plead. The other parties were informed. All concerned requested that the trial be continued until his plea had been considered by the Court. At 2 p. m. the jury panel was excused until 9:30 a. m. Monday, July 26. At a hearing during the late afternoon of Friday, July 23, Mr. Colmar's plea to a misdemeanor was accepted and he was dismissed as a defendant in the case.

On Monday neither Mr. Colmar or his attorneys were present. At a bench conference I asked the attorneys their suggestion concerning what, if anything, I should tell the jury concerning his absence. The government asked that I tell them nothing.

Mr. Dempsey, counsel for Mr. Winkle, said he had "no position" as to that question.

I asked the jury panel if any one of them had read or heard anything about the case over the weekend, received a negative answer, and told the jury nothing concerning Mr. Colmar's absence.

A jury was selected, the trial ensued and required about seventeen trial days.

During the trial Mr. Distefano was dismissed as a defendant in Counts Two through Twenty inclusive.

The jury returned verdicts on August 17, 1976, finding Mr. Winkle guilty as to each of the nineteen counts charging violations of Title 18, Section 1001, United States Code.

The jury could not agree as to a verdict as to either Mr. Winkle or Mr. Distefano on the conspiracy charge and a mistrial as to each on Count One was declared.

Mr. Winkle was sentenced on September 24, 1976, and notice of appeal was filed September 27, 1976.

The case against Mrs. Winkle and against Mr. Winkle and Mr. Distefano on Count One was reset for trial, and on September 7, 1976 the government dismissed the remaining counts against them.

On November 8, 1976 I extended time for filing appeal transcript until December 27, 1976.

On November 9, 1976 Mr. Levine, as counsel for Mr. Winkle, filed a notice of intention to interview the trial jurors. Therein he stated that during a telephone conversation with Mr. Dempsey on October 28, 1976 he was advised by Mr. Dempsey that on August 17, 1976, after the verdict was returned that day, Mr. Dempsey had talked with one of the jurors, Bryan Putnam. Mr. Levine suggested the need to interview Mr. Putnam and the other jurors.

The Court noticed a hearing at which time Mr. Putnam was directed to be present.

On November 17, 1976 a motion for substitution of Mr. Levine as counsel for Mr.

Winkle, to which Mr. Dempsey consented, was filed and was granted by the Court.

On December 2, 1976 Mr. Winkle's motion to the United States Court of Appeals for the Fifth Circuit to temporarily stay proceedings in that Court and relinquish jurisdiction to this Court was granted.

Testimony was taken of the following persons: Bryan Putnam, a member of the jury, on November 18, 1976; Attorney Dempsey on November 19, 1976; and Marjorie Graham on December 16, 1976. The testimony has been transcribed and will be a part of the record on appeal.

Briefly, it was the juror Putnam's testimony that during the deliberation when they were discussing the conspiracy count he heard one of the jurors—a Mrs. Graham—say that Mr. Colmar had pled guilty before trial, but that he didn't hear her say how she knew that. Mrs. Graham later testified that since Mr. Colmar was there the first day of the trial she "just supposed that he had pleaded guilty", but that she had not read anything about that or "had no way of knowing that".

As has been mentioned, the jury did not return verdicts as to either Mr. Winkle or Mr. Distefano as to Count One, the conspiracy charge.

Excerpts from the transcript as to instructions given the jury are as follows.

On Monday, July 26, after Mr. Colmar had pled in the absence of the jury on July 23, before resuming voir dire:

"THE COURT: Now, good morning. The weekend, of course, has intervened and you will remember that I had asked you not to read anything or look at anything or hear anything about this case. Since that time, it may be that by inadvertence or mistake or otherwise, you may have read or heard or seen something about this case or any of the parties whose names you heard mentioned. Did you? If you did, it would be of help to let us know. All right. Thank you."

Later on that day—

"THE COURT: All right. Now you will remember that I told you what the case was about. I referred to what is called an indictment, told you that that is not evidence, you should not consider it against the defendants. I told you who the parties were and who their attorneys were. Except for what you have heard here last Thursday in Court, have any of you ever heard anything about these alleged events? If you have, would you hold your hand up? Any of you know any of the parties whose names were mentioned?"

Typical of instructions at end of each recess, this one given July 29, 1976:

"At any rate, we are going to recess now until Monday morning. That will be Monday—next Monday. I think—I ran off my calendar, so whatever that is. It's August first, I assume. Saturday is the 31st. So, it will be August 2nd, 9:30.

Please keep an open mind about the case. Don't talk about it, read about it, look at anything, hear anything or let anyone who knows anything about it talk with you."

Parts of the Court's final instructions:

"You have been chosen and sworn as jurors in this case to try the issues of fact presented by the allegations of the indictment, insofar as they relate to the defendants whose case is before you for consideration, and the denials respectively made by their not guilty pleas.

The charges are set out in the indictment. A copy of the indictment will be sent to you in the jury room for your use. You will note that it contains the names of Leonarda, a/k/a "Nadine" Paturso Winkle and Alan Colmar as defendants; they have been severed from the trial of this cause. You will not be required to render verdicts as to them. You are not to be concerned with that fact.

You will be called upon to render verdicts as to the defendants Ernest A. Winkle and Joseph N. Distefano, respectively.'

A separate crime or offense is charged against both of said defendants in Count One and against Ernest A. Winkle in each of Counts Two through Count

Twenty, inclusive. Each of the defendants has pled not guilty as to each charge against him. Each count and the evidence pertaining to it should be considered separately."

"Any evidence as to which an objection was sustained by the Court, and any evidence ordered stricken by the Court, or which you are instructed to disregard, must not be considered by you."

"It is your duty to give separate, personal consideration to the case of each individual defendant. When you do so, you should analyze what the evidence in the case shows with respect to that individual, leaving out of consideration entirely any evidence admitted solely against some other defendant or defendants. Each defendant is entitled to have his case determined from evidence as to his own acts and statements and conduct, and any other evidence in the case which may be applicable to him."

Among the other grounds urged by defendant is the case of *United States v. Hansen*, 544 F.2d 778 (5th Cir. Jan. 3, 1977). I have considered that case as well as *United States v. Vaughn, et al.*, 546 F.2d 47 (5th Cir. 1977) and the earlier cases cited by the government, including *United States v. Beasley*, 519 F.2d 233 (5th Cir. 1975).

For the help of the Appellate Court General Rule 4(E)(4), Rules of the Middle District of Florida, and Ethical Consideration 7–29 and Disciplinary Rule DR7–108 D of the Code of Professional Responsibility as Adopted by the Supreme Court of Florida are given for a better understanding of the procedure followed by Mr. Levine and the Court.

"Rule 4(E)(4) is amended to read as follows:

'(4) The professional conduct of the members of the Bar of this Court shall be governed by the Code of Professional Responsibility of the American Bar Association as modified and adopted by the Supreme Court of Florida to govern the professional behavior of members of the Florida Bar (including, without limitation, the Florida' modification of EC7–29 and DR7–108(D) imposing restrictions upon the right of counsel to interview jurors after trial). For a violation of any of the provisions of the Code of Professional Responsibility in connection with any matter pending before this Court an attorney may be subjected to appropriate disciplinary action."

"EC7–29. To safeguard the impartiality that is essential to the judicial process, veniremen and jurors should be protected against extraneous influences. When impartiality is present, public confidence in the judicial system is enhanced. There should be no extrajudicial communication with veniremen prior to trial or with jurors during trial by or on behalf of a lawyer connected with the case. Furthermore, a lawyer who is not connected with the case should not communicate with or cause another to communicate with a venireman or a juror about the case.

All attempts to curry favor with juries by fawning, flattery or pretended solicitude for their personal comfort are unprofessional. Suggestions of counsel, looking to the comfort or convenience of jurors, and propositions to dispense with argument, should be made to the Court out of the jury's hearing."

"(D) After dismissal of the jury in a case with which he is connected, a lawyer shall not communicate with or cause another to communicate with any juror regarding the trial except to determine whether the verdict may be subject to legal challenge, in which event he shall scrupulously follow the procedure described and provided for in EC7–29 hereof."

Mr. Levine, counsel for Mr. Winkle, is directed to promptly make arrangements with the court reporter for preparation of the record on appeal, if that has not already been done, and is further directed to notify her of the entry of this order.